**UNITED STATES of America,
Plaintiff,**

v.

**James GAINES, Defendant.**

**No. 99–CR–27S (H).**

United States District Court,
W.D. New York.

March 21, 2000.

Marianne Mariano, Joseph B. Mistrett, Fed. Public Defender Office, Buffalo, NY, for defendant.

Joel L. Violanti, U.S. Attorney's Office, Buffalo, NY, for plaintiff.

## ORDER

SKRETNY, District Judge.

1. By Order entered April 6, 1999, this Court referred this case to the Honorable Carol E. Heckman, United States Magistrate Judge.

2. On July 7, 1999, Defendant Gaines filed a motion to suppress.

3. On November 16, 1999, Magistrate Judge Heckman issued a Report and Recommendation concluding that Defendant's motion to suppress be denied.

4. On November 30, 1999, Defendant filed Objections to Magistrate Judge Heckman's Report and Recommendation.

5. On February 2, 2000, this Court heard oral argument on Defendant's objection and reserved decision at that time.

6. On March 2, 2000, after additional consideration of the parties' arguments and submissions, this Court issued a statement from the bench, for the reasons stated on the record, denying Defendant's objections.

IT HEREBY IS ORDERED, that this Court ACCEPTS Magistrate Judge Heckman's November 16, 1999 Report and Recommendation, including the authorities and reasons stated therein;

FURTHER, that Defendant's motion to suppress is DENIED;

SO ORDERED.

## REPORT AND RECOMMENDATION

HECKMAN, United States Magistrate Judge.

The defendant moves to suppress a statement he made to government agents on February 16, 1999. For the reasons set forth below, it is recommended that the defendant's motion be denied.

## BACKGROUND

A suppression hearing was held on August 10, 1999, and continued on September 2, 1999. One witness testified for the government and two witnesses were called by the defense. The testimony is described below.

The government called Detective Robert Williams. Detective Williams testified that in February of 1999, he was conducting an investigation of a gun sale in Buffalo, New York as part of a Career Criminal Task Force investigation. He arrested the defendant on that day on Dartmouth Street in Buffalo. The defendant was placed in handcuffs and taken to the offices of the Career Criminal Task Force, and later to the offices of the Department of Alcohol, Tobacco, and Firearms ("ATF"). He was arrested for possession of a weapon.

Detective Williams and one other agent interviewed the defendant in the ATF office in the federal building. This interview occurred within one hour after the arrest. At the outset, Detective Williams read the defendant his *Miranda* rights (Exhibit 1). The defendant informed the agents that he could not read, and therefore the form was read aloud to him. This form was not signed by the defendant, but the form indicates that it was verbally acknowledged by him. It was also certified by Detective Williams. Following the acknowledgment, the defendant made a statement to the government. The statement was marked at the hearing as Exhibit 2.

On cross examination, Detective Williams acknowledged that four of the persons involved in the investigation that day were Erie County Parole Officers. The defendant was on parole at the time. He did not recall any conversation with the defendant about cooperation, but acknowledged that cooperation would normally be of interest to the agents.

The defendant called Special Agent Robert Wilson, who was also participating in the arrest on February 16, 1999. Agent Wilson testified that there were parole officers present during the arrest. He recalled a conversation about cooperation but testified that this occurred after the defendant had made a statement to the agents, while he was waiting in the courthouse for Pretrial Services to interview him. Agent Wilson denied that the defendant was promised anything in exchange for cooperation.

The defendant testified at the hearing that he is 33 years of age and completed ninth grade at Burgard High School. He stated that he can barely read and write. He denied that he was given *Miranda* rights by Detective Williams or anyone else that day prior to making a statement.

He also testified that he believed he was not under arrest. According to the defendant, he was never advised that he was under arrest and was never asked to sign a *Miranda* warnings waiver. He also was asked about cooperation at the scene of the arrest by Agent Williams. Specifically, Gaines said he was asked if he knew a man that was selling firearms. He acknowledged that he was in handcuffs but indicated that his property was not taken from him at the scene of the arrest. He believed that the agents might let him go back on the street if he cooperated with them. He further testified that if he had been read his rights, he would not have made a statement.

On cross examination, the defendant acknowledged that he was previously arrested for a crime. He was physically tackled by police and then handcuffed, placed in a police car, and taken to the Buffalo Police Headquarters. At that time, the police read him his rights from a card which he signed, and he also signed a statement indicating that he was under arrest. The case went to trial, and he does not recall whether his statement was used as evidence at trial.

The defendant acknowledged that in 1999, he knew that if *Miranda* warnings were given and he gave a statement, the

statement could be used against him at trial. He also acknowledged that what occurred to him on Dartmouth Avenue in February 1999 was similar to what had occurred to him in 1994 in that he was placed in handcuffs and transported in police custody to a police office. However, he also indicated that in 1994 he was read his rights in the back of the police car immediately following his arrest, whereas in this case he was not.

The defendant testified that he does not recognize government Exhibit 1, the acknowledge of rights form which states that it was verbally acknowledged by the defendant.

## *DISCUSSION*

The defendant raises two arguments in support of his motion to suppress the statement he gave to the government on February 19, 1999. First, the defendant claims that he was not read his *Miranda* warnings. Second, the defendant argues that even if warnings were administered to him, he did not voluntarily waive his rights. Each of these arguments will be discussed in turn.

### A. Administration of *Miranda* warnings

The testimony on this issue is in direct conflict. According to the government's witness, Detective Williams, the defendant was read his *Miranda* rights and verbally acknowledged them but refused to sign the form indicating that he was waiving his rights. In contrast, according to the defendant, *Miranda* rights were never given to him. The third witness who testified at the hearing, Special Agent Williams, was not present when the *Miranda* warnings were allegedly given and therefore had no pertinent testimony to offer as to this issue.

Thus, the court is faced with a credibility question and must determine which witness to believe—Detective Williams or the defendant. I find that the government's position is more credible on this issue.

Exhibit 1 supports Detective Williams' testimony. It indicates that the rights were read on February 16, 1999 at 1:58 p.m. and that the defendant verbally acknowledged his rights. It also indicates that the defendant himself did not read the rights but they were read to him. This is consistent with the detective's testimony that the defendant was unable to read. In addition, the form indicates that the defendant waived his rights at 1:59 p.m. Again, it indicates that they were verbally waived, and the detective testified that the defendant refused to sign the form. The form was witnessed by the other agent present at the time, Salamone DeJesus. For some reason, Agent DeJesus was not called by the government to collaborate Detective Williams' testimony. Nonetheless, I find Detective Williams' testimony to be credible.

The defendant, on the other hand, has been previously arrested and given *Miranda* warnings. He understands the impact on his criminal case of giving a statement to law enforcement officers. He is an interested party in this proceeding, and therefore has an incentive to testify that no *Miranda* warnings were given. I therefore find him to be less credible than Detective Williams.

### B. Voluntary waiver of *Miranda* rights

Defendant also argues that the statements were not the product of free choice but rather the result of coercive circumstances. Specifically, defense counsel argues that the defendant did not know that he was under arrest and was given some sort of promise of leniency, which was coercive given his parole status. Each of these arguments will be discussed in turn.

The defendant argues that he did not know he was arrested in that he was not advised that he was under arrest, was not processed before the interview occurred, and did not have personal items taken from him prior to the interview. He testified that the last time he was arrested, he

was advised that he was under arrest, he was processed, and he was searched prior to the interview occurring. He claims that he is aware that sometimes individuals are detained and then released without being arrested, and he believed that that was occurring in this instance. This belief was supported by the fact that he was asked about cooperation very shortly after he was placed in handcuffs.

This argument is unpersuasive. First and foremost, it is inconsistent with the testimony of Detective Robert Williams, which is credited above in the discussion on the *Miranda* rights issue. According to Detective Williams, the defendant was advised that he was under arrest for possession of a weapon when he was placed in handcuffs on Dartmouth Street in Buffalo.

Furthermore, as set forth above, I find that the defendant was advised of his *Miranda* rights. Even if the defendant had not been advised that he was under arrest, this advice of rights as set forth in Exhibit 1 is sufficient to establish that the defendant knew that he was under arrest.

Finally, there are other uncontested facts which should have indicated to the defendant that he was under arrest. He was immediately placed in handcuffs, and was transported first to the Career Criminal Task Force offices and then later to the ATF offices in a police vehicle. Other officers were present, both during the interview and when he was transported downtown. Clearly, the defendant was in custody at the time and was not free to leave. The question of when he was searched and when he was processed are not determinative. The real question was whether he was free to go. *Berkemer v. McCarty*, 468 U.S. 420, 441–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Ali*, 68 F.3d 1468, 1472 (2d Cir.1995), *on reh'g*, 86 F.3d 275 (2d Cir.1996). It is undisputed that the defendant was under physical restraint and was not free to go at any time between the time he was taken into custody and the time of the interview.

I therefore find that no reasonable person would have believed that he was not under arrest at the time. But even if the defendant did not believe that he was under arrest, this still would not necessarily mean that his statement was involuntary. *See United States v. Ruggles*, 70 F.3d 262, 264–65 (2d Cir.1995), *cert. denied*, 516 U.S. 1182, 116 S.Ct. 1284, 134 L.Ed.2d 229 (1996) (voluntariness of custodial statement determined by careful evaluation of totality of circumstances, including accused's background, experience and familiarity with law enforcement techniques, the conditions of interrogation, and the conduct of law enforcement officials; citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

The defendant also argues that the statements made by the defendant were not a product of free choice and that he never knowingly, voluntarily, or intelligently waived his *Miranda* rights. In support of this argument, defendant argues that the presence of four parole officers operated as coercive circumstances. Since he was on parole, following his arrest he was not eligible for release. *People v. Skinner*, 33 N.Y.2d 23, 347 N.Y.S.2d 178, 300 N.E.2d 716 (1973) (parolees are not entitled to bail or release pending a parole revocation hearing). According to the defendant, the discussion immediately turned to his cooperation. By pursuing the charge, the government forced the parole officers to violate his parole, which would result in automatic custody.

The defendant cites the habeas corpus case of *Williams v. Withrow*, 944 F.2d 284 (6th Cir.1991), in support of his argument. There, a petition for habeas corpus was granted following a finding that the petitioner's statements during interrogation were coerced. Specifically, the court there found the defendant's admissions were induced by a promise of leniency and that petitioner was told he could "walk" if he told the truth and that this promise was

sufficient to overcome his will and render his admissions involuntary.

Defendant also cites the case of *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), in which Justice White indicated that "even a mild promise of leniency [may be] sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." *Id.* at 754, 90 S.Ct. 1463.

Implicit in defendant's argument is the assumption that the defendant was promised leniency in exchange for his cooperation and only made the statements to police because he believed he had a reasonable chance of gaining his own release. But this is not supported by the record.

■ In this case, there is no record from either of the two police witnesses that the defendant was promised that he would be released if he talked. Even Gaines' testimony does not support this conclusion. Although Gaines testified that he believed he might be allowed to go back on the street if he cooperated, he did not affirmatively testify that he was promised that outcome. In other words, in this case, there is insufficient proof of any objectively coercive police activities which were sufficient to overbear the will of the defendant. *See McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir.1988), *cert. denied*, 490 U.S. 1020, 109 S.Ct. 1744, 104 L.Ed.2d 181 (1989). The fact that the defendant may have felt coerced is insufficient, if those feelings were not the result of objectively coercive police activity.

■ I refuse to find that the presence of parole officers, in and of itself, was sufficient to make the police activity coercive. Furthermore, I find no evidence of any other coercive circumstances, such as those present in *Williams v. Withrow*. These included questioning prior to giving *Miranda* warnings, using severe and accu-satory tone of voice, and explicit promises of leniency. There is also no proof of threats, violence or any other mistreatment of the defendant.

Accordingly, reviewing the question voluntariness based on all of the surrounding circumstances, defendant's argument should be rejected.

### CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion be denied.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED,** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute and Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York.

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. *See, e.g., Paterson–Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir.1988).

***Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.*** *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wesolek, v. Canadair Ltd.*, 838 F.2d 55 (2d Cir.1988).

The parties are reminded that, pursuant to Rule 58.2(a)(3) of the Local Rules of Criminal Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by

legal authority." *Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.*

Let the Clerk send a copy of this Order and Report and Recommendation to the attorneys for the parties.

**SO ORDERED.**

November 16, 1999.