UNITED STATES of America,

v.

John HAAK, Defendant.

15-CR-220(LJV)(JJM)

United States District Court,
W.D. New York.

Signed October 18, 2016

Frank T. Pimentel, U.S. Attorney's Office, Buffalo, NY, for United States of America.

David R. Addelman, Addelman & Marszalkowski, PC, Buffalo, NY, for Defendant.

## DECISION AND ORDER

LAWRENCE J. VILARDO, UNITED STATES DISTRICT JUDGE

### DECISION AND ORDER FOR THE SUPPRESSION OF EVIDENCE

The defendant, John Haak, is charged in a one-count Indictment with possession with intent to distribute, and distribution of, fentanyl in violation of 21 U.S.C. § 841(a)(1). The Indictment also charges under § 841(b)(1)(C) that "death...resulted from the use of such substance."

The defendant moved, *inter alia*, to suppress his statements made to government agents on March 4, 2015, and Magistrate Judge Jeremiah J. McCarthy issued a Re-

port and Recommendation recommending that the statements be suppressed. For the reasons stated below, the defendant's motion is GRANTED insofar as it seeks suppression of his March 4, 2015 statements.

## I. FACTUAL BACKGROUND

On March 4, 2015, Town of Hamburg Detective Sergeant and Drug Enforcement Administration Task Force Agent Glenn Zawierucha ("Detective Zawierucha") interviewed John Haak. Detective Zawierucha conducted the early afternoon interview at the Town of Hamburg Police Department in the presence of another officer. Haak came to the interview voluntarily and had his car with him at the police station.

Before the interview began, Detective Zawierucha gave Haak an incomplete rendition of the *Miranda* warnings: Haak was informed of his constitutional rights (1) to remain silent; (2) to consult counsel, who could be appointed to represent him free of charge, if necessary; and (3) to stop answering questions at any time. Haak was not told that anything he said could be used against him in a court of law, but he did verbally acknowledge his familiarity with the *Miranda* warnings, having received them once before. After Haak agreed to answer questions, he was told before, and several times during, the interview, that "[he was] walking out of here today" and that "anytime, we can stop, you can end this whole conversation, you can walk outta here." [1]

---

1. There was no transcript of the interrogation prepared in this case. Unless otherwise noted, all quoted statements by Haak or Detective Zawierucha are drawn directly from Docket Item 23, the interrogation disk, which the Court has viewed and listened to several times. To the extent there are discrepancies between the quoted language used in this Decision and Order and language used in the parties' submissions or Judge McCarthy's Report and Recommendation, those discrepancies do not change the Court's substantive conclusions.

The questions posed to Haak concerned both the distribution of drugs and the recent death of J.F., an acquaintance of Haak, from a fentanyl overdose. Detective Zawierucha conversationally confronted Haak about his recent text messages that in both substance and frequency implicated Haak in supplying drugs to the deceased. In the words of the government, "...Zawierucha was seeking Haak's cooperation regarding the source of the fentanyl and any information Haak might have regarding other persons using the same drugs so that officers might prevent further fatalities." Docket Item 25 at 3.

During the course of the interview, Detective Zawierucha made several statements that give rise to the defendant's motion to suppress. For example, shortly into the interview, Detective Zawierucha told Haak that J.F. had died and that a federal investigation was in progress:

He overdosed on the fentanyl and died Saturday.... So you were the last person he was actually texting, and uh, the heroin that he shot up came from you.... But here's the thing. Sit back and relax, take a breath.

He then began to speak with Haak more directly about the purpose of their conversation:

Okay, you got a couple choices you can make right now. There's a multi-county, federal investigation where people are gonna get wrapped up in a conspiracy charge for distributing heroin containing fentanyl. Primarily the people that are the direct people that distributed this, especially if it caused a death, are gonna be the number one targets.... You don't need this shit—

Later, Detective Zawierucha said:

I'm not looking to screw you over, not lookin' even to come after you on this, but you need to make a conscious decision. Okay? I told you you're walking

out of here, you are walking out of here. But there's a death investigation that this department here is investigating along with the Drug Enforcement Administration caused by heroin containing fentanyl that *you* sold to the deceased. Technically, could look very bad for you.... I'm not lookin' to mess with you, I'm not lookin' to come after you, but you gotta get on board or you, you shut your mouth and then the weight of the federal government is gonna come down on you.

Detective Zawierucha and the defendant also had the following exchange with respect to Haak's potential cooperation:

Zawierucha: Alright now here's the thing. I'm gonna ask ya, and it's your call. Either you can get on board, put the team jersey on here, play for this team, or you can be on the losing team.

Haak: I don't wanna be on that team.

Zawierucha: No? I'm just telling you, it's as simple as that, I'm making an analogy here. I'm looking for your cooperation on this, but you're gonna save yourself a world of hurt. Alright? Who's your plug?

Haak decided to play on the government's team. He provided the name of his drug supplier and agreed to participate in a controlled drug purchased from the named fentanyl dealer. About half of the thirty-three minute interview involved discussing, and planning for, Haak's controlled drug purchase. Docket Item 25 at 3.

Consistent with Detective Zawierucha's word, Haak walked out of the police station that afternoon. A few days later, the defendant cooperated in the drug purchase from his supplier. The next day, however, Haak learned that he had been cut from the team: on March 10, 2015, he was

charged by federal criminal complaint for distributing, and conspiracy to distribute, heroin. W.D.N.Y. Docket No. 15–M–1018, Docket Item 1.

## II. PROCEDURAL BACKGROUND

On December 1, 2015, Haak was indicted in the Western District of New York, and the case was referred to Magistrate Judge McCarthy. Docket Item 1; Text Order entered on December 8, 2015. On January 11, 2016, the defendant filed an omnibus motion seeking, among other things, to suppress his March 2015 statements. Docket Item 4 at 18-19 (pt. IX). The government responded on February 8, Docket Item 6, and Haak replied on March 14. Docket Item 9. Judge McCarthy heard oral argument on March 21 and resolved all issues except the defendant's request for a suppression hearing. *See* Docket Item 10.

On March 21, Judge McCarthy requested additional briefing by the parties on the suppression issue. Docket Item 13. In his request, Judge McCarthy candidly noted that he found the defendant's arguments in favor of suppression, including an alleged threat of prosecution, to be unconvincing. *See* Docket Item 13 ("I see nothing *per se* improper with a threat of prosecution if defendant did not cooperate."). But instead of simply denying the motion to suppress the statements based on those arguments, Judge McCarthy raised an issue of his own: whether the defendant's confession was voluntary or was coerced by false and misleading promises. *Id.* at 2-5. He therefore requested additional briefing on that issue. *Id.* at 6.

In response to Judge McCarthy's request, the defendant and the government simultaneously submitted memoranda addressing the voluntariness of Haak's March 2014 statements, Docket Items 18 & 19, respectively; they also submitted several informal briefings by e-mail, Docket Item 22. In these submissions, the parties agreed that the voluntariness of the defendant's statements warranted an objective analysis (i.e., that the defendant's testimony regarding his state of mind during the interview would not be necessary). In addition, the government raised a new, public-safety justification for denying the motion to suppress the defendant's statements. *See id.*

On July 8, 2016, Judge McCarthy issued his Report and Recommendation, recommending that the defendant's motion to suppress be granted. Docket Item 24. After he rejected the government's public-safety argument for denying suppression, Judge McCarthy found that the totality of the circumstances "clearly and convincingly demonstrate[d] that [Detective] Zawierucha caused defendant to confess, by creating the false impression that if he cooperated with the government he would not be prosecuted." *Id.* at 11 (footnote omitted). For that reason, and based on his finding that Haak's confession was involuntary, Judge McCarthy recommended to this Court "that defendant's motion...be granted to the extent that it seeks suppression of the statements [given to Detective Zawierucha], but that the remainder of the motion be denied as moot, having been withdrawn." *Id.*

The government timely objected to the Report and Recommendation, Docket Item 25, the defendant responded, Docket Item 27, and the government replied, Docket Item 29. On September 7, this Court heard oral argument on the government's objections, and both sides submitted additional papers on September 15 and 18. Docket Items 39 & 40.

This Court now has reviewed Judge McCarthy's Report and Recommendation, along with all papers and evidence submitted by both sides. After a de novo review,

the Court accepts the Report and Recommendation of Judge McCarthy and grants the defendant's motion to suppress.

## III. APPLICABLE LAW

### A. Standard of Review

The court reviews de novo a magistrate judge's Report and Recommendation to suppress evidence in a criminal case. *See* 28 U.S.C. § 636(b)(1); Fed. Rule Crim. P. 59(b)(3). In conducting its review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### B. Voluntariness of Confessions

■ Whether Haak's statements to Detective Zawierucha should be suppressed hinges on whether his statements were voluntary.[2] The Fifth Amendment provides that "[n]o person...shall be compelled in any criminal case to be a witness against himself ... without due process of law." U.S. Const. Amend. V. The voluntariness inquiry, conducted under this Due Process Clause of the Fifth Amendment, considers "whether a defendant's will was overborne" by the circumstances of the confession. *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)).

■ Before a court can find that a confession was involuntary, it first must find that there was police activity and that this activity was coercive. *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) ("[C]oercive police ac-

tivity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."). The government bears the burden of proving that a defendant's confession was voluntary, *United States v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010), but only when there is "a substantial element of coercive police conduct" that is "so offensive to a civilized system of justice that [it] must be condemned" should a court conclude that a defendant's statement was involuntary. *Connelly*, 479 U.S. at 163, 164, 107 S.Ct. 515. And a confession is involuntary only if there is a causal connection between the interrogation and the confession. *Id.*

■ Because "[n]o single criterion controls whether an accused's confession is voluntary[,] whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." *Green v. Scully*, 850 F.2d 894, 901 (2d Cir. 1988). This totality test of voluntariness centers on "three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of the interrogation, and (3) the conduct of the law enforcement officials." *Id.* at 901–02. After considering these factors, the court decides whether "under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act." *Id.* at 902. The inquiry is an objective one. *See United States v. O'Brien*, 498 F.Supp.2d 520, 534 (N.D.N.Y. 2007) ("To determine whether a statement is uncoerced and voluntary within the ambit of the Due Process Clause, a court must objectively assess the totality of the circum-

---

**2.** The Report and Recommendation found, and the parties agree, that Haak was not in custody and that Detective Zawierucha therefore was not required to issue the *Miranda* warnings to Haak. *See* Docket Item 24 at 5.

As a result, the inquiry here focuses on whether the defendant's statements were voluntary under the Due Process Clause of the Fifth Amendment, not on whether there was a *Miranda* violation.

stances surrounding the interaction between the suspect and the police...."), *aff'd in* 303 Fed.Appx. 948 (2d Cir. 2008).

With respect to the first set of circumstances—the characteristics of the accused—courts consider whether a defendant's prior criminal records demonstrates familiarity with police questioning and *Miranda* rights. *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir. 1995). Courts also consider a defendant's maturity and age, education, and intelligence, *id.* as well as a defendant's unique sensitivities, inability to cope with stress, and relationship to the interrogator. *Arizona v. Fulminante*, 499 U.S. 279, 286 n.2, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

Under the second set of circumstances—the conditions of the interrogation—courts examine whether a defendant was in custody as well as whether the defendant was told that he had to speak to police officers, whether the defendant was informed that he was or was not under arrest, and whether he could leave at any point during an interview. *See Ruggles*, 70 F.3d at 265. Other considerations include the place of interrogation and the presence of counsel. *Green*, 850 F.2d at 902.

The third and final set of circumstances—the conduct of law enforcement officials—includes:

> [any] repeated and prolonged nature of the questioning or the failure to inform the accused of his constitutional rights...; whether there was physical mistreatment such as beatings...; or long restraint in handcuffs, and whether other physical deprivations occurred such as depriving an accused of food, water or sleep...; or even of clothing....

*Id.* But police conduct need not be physical to make a confession involuntary: relevant "police conduct might include psychologically coercive techniques such as brainwashing[,] promises of leniency or other benefits," or threats.[3] *Id.* If these techniques, viewed objectively and under the totality of the circumstances, overcame the will of the defendant, the confession is involuntary.

Indirect or general promises of leniency usually are not enough to render a confession involuntary. "In assessing the totality of the circumstances, vague promises of leniency for cooperation are just one factor to be weighed in the overall calculus and generally will not, without more, warrant a finding of coercion." *United States v. Gaines*, 295 F.3d 293, 299 (2d Cir. 2002) (finding a statement voluntary where government agent said the prosecutor and judge would be made aware of the defendant's cooperation); *United States v. Romano*, 630 Fed.Appx. 56, 58–59 (2d Cir. 2015) (summary order), *cert. denied,* —— U.S. ——, 136 S.Ct. 2041, 195 L.Ed.2d 239 (2016). On the other hand, falsely promising specific favorable treatment when the

---

**3.** Because Haak originally sought to suppress his statements on the theory that Detective Zawuierucha had coercively threatened him, Docket Item 16 at 1, the Court pauses to acknowledge the difficult-to-discern distinction between threats and promises. In the words of the Ninth Circuit, "In many ways, both types of statements are simply different sides of the same coin: 'waive your rights and receive more favorable treatment' versus 'exercise your rights and receive less favorable treatment.'" *United States v. Harrison*, 34 F.3d 886, 891 (9th Cir. 1994). But they are "not entirely interchangeable." *Id.* For example, the Fourth Circuit found that the threat of "you can do five years because you're not coming clean" did not constitute an implied promise that "if you 'come clean,' you will not be prosecuted." *United States v. Braxton*, 112 F.3d 777, 782, 783 (4th Cir. 1997) ("A law enforcement officer's admonishment to a suspect during an investigatory interview to tell the truth or face consequences is simply not an implied promise of non-prosecution.").

questioner does not intend to honor the promise may cross the line and overcome a defendant's will to remain silent. *See Ruggles*, 70 F.3d at 265.

▮▮▮▮ And sometimes, even falsity is not enough: not all "[p]loys to mislead a suspect or to lull him into a false sense of security" are necessarily coercive. *United States v. Pryor*, 474 Fed.Appx. 831, 835 (2d Cir. 2012) (quoting *Illinois v. Perkins*, 496 U.S. 292, 296, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990)). Ultimately, although law enforcement's affirmative misrepresentations could be coercive enough to render a defendant's statement involuntary, *United States v. Anderson*, 929 F.2d 96, 100 (2d Cir. 1991) (discussing waiver of the Fifth Amendment privilege), a statement should not be suppressed where a defendant merely "was moved to cooperate, rather than coerced." *United States v. Corbett*, 750 F.3d 245, 253 (2d Cir. 2014). Simply stated, the question is whether a promise is false and specific enough to coerce a defendant to confess against his will. In the words of the Second Circuit, an officer's touting "unfulfillable promises or certain other misrepresentations...might render a confession involuntary," largely "because they overcome his desire to remain silent." *Gaines*, 295 F.3d at 299.

## IV. ANALYSIS

### A. The Totality of the Circumstances Weighs in Favor of Suppression.

▮▮▮▮ Haak's personal characteristics do not suggest that he is prone to coercion.

For example, he indicated that he was acquainted with his *Miranda* rights, having been given them once before. *See, e.g., United States v. Burrous*, 147 F.3d 111, 116 (2d Cir. 1998) (statements found voluntary where the sixteen-year-old defendant had been arrested one month earlier on an analogous charge). Likewise, the defendant seemed familiar with the criminal justice system and readily understood the concept of the contemplated controlled drug purchase. *See, e.g., Ruggles*, 70 F.3d at 265 (noting defendant's criminal record and prior convictions).

Haak's maturity was on par with his adult age. His actions before, during, and after the recording exhibit at least average intelligence. He had no special relationship or prior encounters with Detective Zawierucha that would have made him particularly trusting or susceptible to confiding in the agent. All these factors weigh in favor of the conclusion that the characteristics of the accused did not undermine the voluntariness of his statements.[4]

▮▮▮▮ The conditions of the interrogation likewise do not in and of themselves suggest that Haak's confession was involuntary. As noted above, the parties appear to agree, and Judge McCarthy concluded, that the defendant was not in custody at the time of the interrogation. Docket Item 18 at 5; Docket Item 19 at 1; Docket Item 24 at 5. Haak came to the police station voluntarily to discuss the case with Detective Zawierucha. Both the detective and

---

4. On the other hand, Haak may well have been shaken when Detective Zawierucha told him that J.F., an acquaintance of Haak, had died. Haak and J.F. apparently had communicated frequently, and judging from Haak's demeanor, the interview was the first time he had heard the news of J.F.'s death. Whatever relationship existed between Haak and the deceased, they were more than strangers; hearing the news of J.F.'s death for the first time while sitting across from a law enforcement officer in an interrogation room undoubtedly had an impact on Haak. Although J.F.'s death was the truth—Detective Zawierucha "[was] not blowing smoke up [Haak's] ass"—the timing of the news, and the fact that it was immediately followed by requests for cooperation, is relevant and bears on the voluntariness of statements subsequently made.

the other officer present in the moderately sized interrogation room were dressed in plain clothes. The entire interview was conversational and involved casual talk both before the interview and after it concluded. There certainly were no threats of physical punishment, and the defendant appeared relatively calm throughout the duration of the interview.

As also noted above, Haak was given *Miranda* warnings, albeit incomplete ones,[5] which largely informed him that he was not required to speak with law enforcement. He repeatedly was told that he could leave at any point during the interview and that he would be walking out of the police station that afternoon. When the interview ran longer than anticipated, Detective Zawierucha politely asked Haak whether Haak could answer a few more questions before he left. Thus, with respect to the conditions of the interrogation, "it would be hard to imagine a more routine, benign, and noncoercive investigatory scenario." *See Braxton*, 112 F.3d at 781 (finding a confession voluntary where the defendant was not under arrest, engaged in a pre-arranged interview in his mother's home, and was not taken into custody at the conclusion of the hour-long interview); *accord Cole v. Lane*, 830 F.2d 104 (7th Cir. 1987) (affirming a finding that a thirty-minute interrogation was not unduly coer-

cive where the defendant "was an educated adult who appeared both calm and in control when he confessed" and who was informed of his *Miranda* rights).

Thus, the first two sets of circumstances—the defendant's personal characteristics and the conditions of interrogation—largely cut in favor of finding Haak's statements to be voluntary. Nevertheless, the third factor—the conduct of the law enforcement officials—warrants suppression of Haak's March 4, 2015 statements to Detective Zawierucha.

There can be little doubt that Detective Zawierucha promised that in exchange for Haak's cooperation, he would not be charged. Detective Zawierucha may not have made that promise in so many words, but his message was nevertheless loud, clear, and unmistakable.

For example, Detective Zawierucha told Haak that "I am not looking to mess with you" or even "to come after you *but* you gotta get on board *or* you, you shut your mouth and then the weight of the federal government is gonna come down on you." (emphasis added). What can that mean other than that the authorities will not "come after" Haak if Haak "gets on board"—that is, that Haak will not be charged with a crime if he cooperates—but

---

5. *Miranda* warnings are required only where there is a custodial interrogation—that is, "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Here, the parties agree that Haak was not in custody, and *Miranda* warnings therefore were not required. The parties cited no law regarding the effect of incomplete *Miranda* warnings in non-custodial interrogations, although some case law suggests that where *Miranda* warnings are not required, the completeness of gratuitously issued warnings is likewise not required. *See,* *e.g., Cohen v. United States*, 405 F.2d 34, 35, 39, 40 (8th Cir. 1968) (finding Internal Revenue Service Agents need not give *Miranda* warnings to taxpayers who are not in custody, in a case where defendant was not advised that counsel would be provided for him). Because suppression is warranted based on the totality of other circumstances, the incomplete *Miranda* warnings do not affect the result. In other words, whether the issuance of *Miranda* warnings that fail to inform a defendant that his statements can later be used against him weighs in favor of the defendant or the government does not alter the Court's conclusion to suppress Haak's statements.

"the weight of the federal government" will come down on him if he does not?

Haak's choice was an easy one, Detective Zawierucha told him. He could "play for this team"—that is, cooperate with the government—or he could "be on the losing team." And if Haak played on the government's team, he was told, "you're gonna save yourself a world of hurt."

So Haak joined what he thought was the winning team. But just a few days after he put on the government's "jersey" and co-operated, he learned that his teammates—led by team captain Zawierucha—had deserted him. He was charged with a crime, and "the weight of the federal government [came] down on [him]."

That is a false and unfulfilled promise—a misleading representation—by any definition. Haak was not simply told that things will be better for him if he cooperates; on the contrary, he was told that he would escape the weight of the federal government coming down on him, and Detective Zawierucha's coming after him, if he played along. And that is the very sort of misrepresentation—the "more," *see Gaines,* 295 F.3d at 299—that turns vague promises of better treatment into improper coercion. *See also, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (holding that where a guilty plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled"); *United States v. Lall,* 607 F.3d 1277, 1286–87 (11th Cir. 2010).[6]

■ The causal relationship between the police conduct and the defendant's coerced statements also is clear. *See Connelly,* 479 U.S. at 164, 107 S.Ct. 515. As the defendant put it, "Given the options presented, who in their right mind would decide not to cooperate or decide not to join the winning team"? Docket Item 27 at 5. Considering the options presented to Haak, the implied promise of avoiding prosecution was not just a factor in his decision—it was the critical factor. *Cf. Green,* 850 F.2d at 903–04 (confession voluntary although police falsely informed defendant that fingerprints matched prints in victims' apartment because defendant was motivated to confess by fear that he would kill again in another "blackout").

*United States v. Walton,* 10 F.3d 1024 (3d Cir. 1993), underscores the point. In that case, an agent told the defendant that he could speak "off the cuff," implying that the defendant's statements would not be used against him. *Id.* at 1027. The court found the ensuing confession to be involuntary because "given the uniquely influential nature of a promise from a law enforcement official not to use a suspect's inculpatory statement, such a promise may be the most significant factor in assessing the voluntariness of an accused's confession in light of the totality of the circumstances." *Id.* at 1030. The same can be said about Detective Zawierucha's implied promise that he was "not looking to screw [Haak] over," and that he was "not lookin' even to come after [Haak]." And when he contrasted that with "the weight of the

---

6. In its reply memorandum, the government argues that Judge McCarthy employed an "inverse fallacy" in his reading of Detective Zawierucha's statements, Docket Item 24 at 3-4: that is, he confused a threat of prosecution in the event of non-cooperation with a promise of non-prosecution in the event of cooperation. Docket Item 25 at 8 n.3. Although, as noted above, the line between threats and promises is thin, Detective Zawierucha's statements were posed as either-or propositions—either cooperate and avoid the government coming after you or fail to cooperate and face the weight of the federal government. As such, they were both threats and promises.

federal government" that would "come down on [Haak]" if he chose not to cooperate, he created a dichotomy between cooperation and the consequences of failing to cooperate that was at least as "uniquely influential" as the implied promise in *Walton.*

In sum, Detective Zawierucha's implicit promises to Haak that he would avoid prosecution by cooperating were false, misleading, and coercive. Even though the other circumstances in the analysis suggest that Haak's confession would have been voluntary, the detective's conduct "inevitably lead[s] to a conclusion that under the totality of circumstances [Haak's] will was overborne and the confession was not therefore a free and voluntary act." *Green,* 850 F.2d at 902; *see also id.* ("The final and most critical circumstance for purposes of this appeal is the law enforcement officers' conduct.").

## B. The Government's Public-Safety Exception Is Inapplicable.

■■ In responding to Judge McCarthy's request for additional briefing, the government raised a new argument based on the Supreme Court's decision in *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). *See* Docket Item 22 at 4. In that case, the Court recognized an exception to the rule requiring the suppression of custodial statements made in the absence of *Miranda* warnings, holding that the warnings "need not precede questions reasonably prompted by a concern for the public safety. . . ." *United States v. Simmons,* 661 F.3d 151, 155 (2d Cir. 2011) (quoting *United States v. Newton,* 369 F.3d 659, 677 (2d Cir. 2004)). Under *Quarles,* public safety provides "a narrow exception to the Miranda rule. . . ." 467 U.S. at 658, 104 S.Ct. 2626. Here, however, denying suppression on that ba-

sis would be neither narrow nor an exception to *Miranda.*

Part of the rationale of *Quarles* was the ease of the exception's application: "The exception will not be difficult for police officers to apply because in each case it will be circumscribed by the exigency which justifies it." *Id.* In *Quarles,* for example, the questioning police officer was attempting to locate a missing weapon in a public supermarket when, after a woman's report of rape by an armed suspect, the officer discovered the fleeing suspect's shoulder holster to be empty. *Id.* at 651–52, 104 S.Ct. 2626.

The exigency here, according to the government, is the threat posed by drug distribution and conspiracy. Drug cases, however, are always marked by some level of threat to the public safety. Certainly, the risks of an overdose or a bad batch, of infected needles or fentanyl-laced heroin, are among the myriad perils inherent in consuming illegal drugs. Because illegal drugs always pose risks to users, applying *Quarles* to drug cases like this one—without more—would allow the exception to swallow the rule. *See* Docket Item 22 at 1.

Here there was no urgency as there was in *Quarles.* Here there was no evidence that police needed to find a particular bad batch of drugs that imminently risked killing users. Indeed, after Haak confessed, the police arranged only for Haak to make his undercover buy; they did not try to immediately locate any dangerous drugs on the street. So there was nothing "exigent" about securing Haak's confession.

Further, as the case law interpreting *Quarles* makes clear, the public-safety exception applies to the requirement of the *Miranda* warnings, not to excuse methods of interrogation that might lead to involuntary statements. Here, because Haak was not in custody when he made the statements at issue, Detective Zawierucha was

not required to give him *Miranda* warnings. And so the exigency exception in *Quarles* has nothing to do with anything.

For those reasons, this case does not warrant application of the *Quarles* exception, let alone its extension to new, non-*Miranda* grounds.

## V. CONCLUSION

For all the above reasons, this Court agrees with Magistrate Judge Jeremiah J. McCarthy that under the totality of the circumstances, Detective Zawierucha's March 4, 2015 interview with the defendant, John Haak, rendered the defendant's statements involuntary under the Due Process Clause of the Fifth Amendment.

The Court adopts the Report and Recommendation entered by Magistrate Judge Jeremiah J. McCarthy in the Western District of New York on July 8, 2016 (Docket Item 24). The defendant's motion (Docket Item 4) is therefore GRANTED to the extent it seeks suppression of the defendant's statements given to Detective Zawierucha. Because the remainder of the motion has been withdrawn, it is DENIED as moot.

SO ORDERED.

## REPORT AND RECOMMENDATION

JEREMIAH J. McCARTHY United States Magistrate Judge

Defendant John Haak is charged in a one-count Indictment [1] [1] with possession with intent to distribute (and distribution of) fentanyl, a Schedule II controlled substance, between February 27 and 28, 2015, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). The Indictment further alleges that "the death of J.F., a person known to the Grand Jury, resulted from the use of such substance".

The case has been referred to me by District Judge Lawrence J. Vilardo for supervision of pretrial proceedings [12]. Before me is defendant's omnibus motion [4] seeking various forms of relief. As confirmed by defendant at oral argument on March 21, 2006 [10], the only unresolved portion of the motion is his request to suppress statement statements given to Town of Hamburg Detective Sergeant/DEA Task Force Agent Glenn Zawierucha ("TFA Zawierucha") on March 4, 2015 ( [4], Part IX). For the following reasons, I recommend that the motion be granted.

## BACKGROUND

Defendant was interviewed by TFA Zawierucha in an interview room at the Town of Hamburg police department on March 4, 2015, in the presence of another officer. The interview was recorded by video [23], and neither party disputes the authenticity or accuracy of the recording, which I have reviewed. Since Judge Vilardo will review the video himself, I need not summarize its contents.

In moving to suppress his statements, defendant argued that "[t]he officers provided an incomplete version of the Miranda warnings, failing to advise the defendant that if he could not afford an attorney that one will be provided for him. While the Defendant was advised that he was 'walking out of here today' he was also told that he owed it to himself to listen to what (the Detective) had to say, and that if he did not get 'on board that the weight of the federal government was going to come down on (him).' Upon information and belief any reasonable person, not guilty of a crime, would have understood those statements to mean that if he wanted to leave 'the weight of the federal government

---

1. Bracketed references are to CM/ECF docket entries.

would fall on him.' This threat implicates any argument that Defendant's statements were voluntary." Motion [4], pp. 20-21 of 22.

In opposing the motion, the government argued that it should be denied because it was not accompanied by an affidavit from someone having personal knowledge, and that in any event "the defendant was admittedly—and truthfully—told before the interview began that he was 'walking out of here today,' which he did. Under these circumstances, it is inconceivable that he was thus the subject of coercive police activity such that his will was overcome. As a result, he is not even entitled to a hearing on the issue, much less suppression." Government's Response [6], pp. 14, 15.

My December 8, 2015 Scheduling Order [3] clearly warned that "any motion to suppress statements ... must initially be accompanied by an appropriate affidavit (or declaration) from an individual with personal knowledge, failing which the court will normally recommend that the motion be denied without an evidentiary hearing". Id., ¶ 3. Notwithstanding that warning, defendant's motion was not accompanied by either an affidavit or a declaration from someone having personal knowledge. While the Notice of Motion referred to "the Affirmation of David R. Addelman, Esq., sworn to on a time and date determined by the Court" ( [4], p. 1 of 22), no Affirmation was attached—instead, the Notice of Motion was accompanied by "Defendant's Motions for Relief". Id., p. 3 of 22.

When the government pointed out that the motion was unaccompanied by an affidavit or declaration, defendant submitted a Reply stating that "Defense Counsel personally observed the videotape [of the statement], placing Defense Counsel in a position to establish this allegation based on his own observations". [9], ¶ 6. However, the Reply was not sworn to before a notary public, nor did it contain the language required by 28 U.S.C. § 1746 for unsworn declarations.

Moreover, I find neither of defendant's arguments in support of suppression to be particularly persuasive. He first argues that "the officers provided an incomplete version of the Miranda warnings, failing to advise the defendant that if he could not afford an attorney that one would be provided for him". Motion [4], p. 20 of 22. However, the video recording of his confession shows that TFA Zawierucha *did* provide that warning. He next argues that the threat "that if he did not get 'on board that the weight of the federal government was going to come down on (him)' .... implicates any argument that Defendant's statements were voluntary". Id., pp. 20–21 of 22. However, I see nothing *per se* improper with a threat of prosecution if defendant did not cooperate.

 "In an adversarial system, it is not for the courts to bring to light the best arguments for either side; that responsibility is left to the parties themselves." United States v. Bendolph, 409 F.3d 155, 172 (3d Cir. 2005). Therefore, in the normal case I would recommend that the motion to suppress be denied. However, having reviewed the video recording of defendant's confession, I have grave concerns as to whether the confession was voluntary—albeit not precisely for the reasons argued by counsel. As the government acknowledges, I may not ignore those concerns merely because they were not specifically raised by defendant. *See* Government's Memorandum [19], p. 2, n. 1 ("the Court is correct that it has the obligation to inquire into the voluntariness of a defendant's

statement *sua sponte*").[2]

Therefore, on April 21, 2016 I issued a Request for Additional Briefing [13], outlining my concerns and inviting the parties to respond. The parties did so on May 13, 2016 [16-19]. We held a further conference on May 19, 2016 to discuss their responses, and at that time an evidentiary hearing was tentatively scheduled for July 7, 2016 [21]. The parties and I then exchanged a series of e-mails ([22], pp. 1-5), culminating in an agreement which I confirmed by Text Order dated June 8, 2016 [22].

## ANALYSIS

 "[W]hen a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered." Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). "No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances." Green v. Scully, 850 F.2d 894, 901 (2d Cir. 1988).

"In applying the totality of the circumstances test, those factors that a court should consider to determine whether an accused's confession is voluntary center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." Id. at 901–02. "[A] single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will

was overborne and the confession was not therefore a free and voluntary act." Id. at 902.

Based upon my review of the video recording, it is primarily the third factor—the conduct of law enforcement officials—that I find troubling. At the outset, I acknowledge that defendant was not in custody at the time of his interrogation. He voluntarily came to the police station, and was repeatedly told that he was free to leave. *See* Oregon v. Mathiason, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (defendant "came voluntarily to the police station, where he was immediately informed that he was not under arrest. At the close of a ½ hour interview respondent did in fact leave the police station without hindrance. It is clear from these facts that [he] was not in custody").

 Nevertheless, "noncustodial interrogation might possibly in some situations, by virtue of some special circumstances, be characterized as one where the behavior of law enforcement officials was such as to overbear petitioner's will to resist and bring about confessions not freely self-determined . . . . Proof that some kind of warnings were given or that none were given would be relevant evidence . . . on the issue of whether the questioning was in fact coercive." Beckwith v. United States, 425 U.S. 341, 347–48, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976); Scott v. Fisher, 652 F.Supp.2d 380, 430 (W.D.N.Y. 2009) (Bianchini, M.J.) ("whether a suspect has been advised of his rights under [Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] is an important consideration in determining whether a confession is voluntary").

---

2. *See also* United States v. Guanespen–Portillo, 514 F.3d 393, 402 (5th Cir. 2008) ("when the evidence clearly reflects a question of the voluntariness of a confession, the trial court must raise the issue on its own motion");

United States v. Silva, 418 F.2d 328, 331 (2d Cir. 1969) ("the testimony concerning the circumstances of [the] confession was such that the trial judge should have ordered a hearing sua sponte").

As defendant "was not in custody ... Miranda warnings were not required". United States v. FNU LNU, 653 F.3d 144, 155 (2d Cir. 2011). However, since TFA Zawierucha elected to provide Miranda warnings to defendant, I cannot overlook the fact that the warnings that he provided were incomplete. Although he advised defendant of his right to an attorney and his right to remain silent, he did *not* warn him that anything he said could be used against him, and that omission is significant. "The warning of the right to remain silent must be accompanied by the explanation that anything said can and will be used against the individual in court. This warning is needed in order to make him aware not only of the privilege, but also of the consequences of forgoing it. It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege. Moreover, this warning may serve to make the individual more acutely aware that he is faced with a phase of the adversary system—that he is not in the presence of persons acting solely in his interest." Miranda, 384 U.S. at 469, 86 S.Ct. 1602.

The significance of that omission comes into clear focus when one considers what TFA Zawierucha *did* say to defendant: "*I'm not trying to screw with you.* Just trying to get some facts .... Okay, *you have a couple of choices* you can make right now. There is a multi-county federal investigation where people are going to get wrapped up in a conspiracy charge for distributing heroin containing fentanyl. Primarily the people that are the direct people that distributed this, especially if it caused a death, are going to be the number one targets. You don't need this shit .... I am not looking to screw you over, *not even looking to come after you on this,*

but you need to make a conscious decision .... *I am not looking to mess with you, I am not looking to come after you*, but you have to get on board *or* you shut your mouth and *then* the weight of the federal government is going to come down on you .... It's your call. You can *either* get on board, put on the team jersey, play for this team, *or* you can be on the losing team." [3]

The government argues that "a confession is not involuntary merely because the suspect was promised leniency if he cooperated with law enforcement officials. Certainly, statements to the effect that it would be to a suspect's benefit to cooperate are not improperly coercive. Statements such as these are merely common sense factual observations." Government's Memorandum [19], pp. 4-5 (*quoting* United States v. Ruggles, 70 F.3d 262, 265 (2d Cir. 1995)). However, in Ruggles, the defendant was told only that "it would be to [his] benefit to cooperate, and that his cooperation would be brought to the attention of the prosecutor". 70 F.3d at 264. There was no express or implied representation that he would not be prosecuted at all—otherwise, why mention the prosecutor?

Here, by contrast, TFA Zawierucha assured defendant that he was "not looking to come after" him, and stated that "if [he] chose *not* to cooperate, 'the weight of the federal government is going to come down on [him]' ". Government's Memorandum [19], p. 3 (emphasis added). The clear implication of that statement was that if he *did* cooperate, the weight of the government would *not* come down on him. That implication is confirmed by TFA Zawierucha's reference to "putting on the team jersey" and "playing for this team": "you have a couple of choices you can make right now .... It's your call. You can *either* get on board, put on the team jer-

---

3. Chambers transcription of the video record- ing, emphasis added.

sey, play for this team, *or* you can be on the losing team."

The government initially asserted that "[h]ad Haak followed through with the cooperation", he would have received "a measure of lenity", but "[t]hat he is now choosing otherwise does not render his statements to Zawierucha involuntary". Government's Memorandum [19], p. 10. When I asked "[e]xactly how did he fail to cooperate?" ([22], p. 5), the government reversed course, stating that "for the time being [it] will withdraw the 'unfulfilled bargain' argument .... Haak has <u>not</u> indicated that he is refusing to continue cooperating". [22], pp. 3-4 (emphasis in original).[4]

■ The government also argues that suppression is not warranted because "Zawierucha's questions were reasonably prompted by a concern for the public safety". [22], p. 4 (*citing* <u>New York v. Quarles</u>, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984)). However, the "public safety" doctrine is "a narrow exception to the Miranda rule" (<u>Quarles</u>, 467 U.S. at 658, 104 S.Ct. 2626), which is not at issue here, since the questioning of defendant was non-custodial. Moreover, the doctrine applies only "so long as the questioning relates to an objectively reasonable need to protect the police or the public from any *immediate* danger". <u>United States v. Newton</u>, 369 F.3d 659, 677 (2d Cir. 2004) (emphasis added); <u>United States v. Simmons</u>, 661 F.3d 151, 156 (2d Cir. 2011) ("public safety questions are framed spontaneously in dangerous situations").

In <u>Quarles</u>, the police "in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect had just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it." 467 U.S. at 657, 104 S.Ct. 2626.

The Court reasoned that "had Miranda warnings deterred Quarles from responding to Officer Kraft's question about the whereabouts of the gun, the cost would have been something more than merely the failure to obtain evidence useful in convicting Quarles. Officer Kraft needed an answer to his question not simply to make his case against Quarles but to insure that further danger to the public did not result from the concealment of the gun in a public area. We conclude that the need for answers to questions in a situation posing a threat to the public safety outweighs the need for the prophylactic rule protecting the Fifth Amendment's privilege against self-incrimination." <u>Id.</u> In any event, the question before me, namely whether defendant's confession was voluntary, was not even at issue in <u>Quarles</u>. *See* 467 U.S. at 654, 104 S.Ct. 2626 ("we have before us no claim that respondent's statements were actually compelled by police conduct which overcame his will to resist").

■ The government maintains that although it bears the "burden to demonstrate voluntariness ... it is the defen-

---

4. In fact, the government admits that following the interview, at TFA Zawierucha's urging defendant conducted a controlled drug purchase from Francis Tessina, which "led to Tessina's arrest and both Haak and Tessina being charged in this Court by federal criminal complaint on March 10, 2015". Govern-

ment's Memorandum [19], pp. 3-4. According to TFA Zawierucha's affidavit in support of that complaint, the controlled purchase occurred on March 9, 2015, one day before defendant and Tessina were charged. *See* 15-mj-1018 [1], ¶ 5.

dant's burden to prove a claim of involuntariness caused by deceit by clear and convincing evidence." Government's Memorandum [19], p. 5.[5] In an e-mail to counsel dated May 26, 2016, I stated that "I agree with the government that it is Haak's burden to prove, by clear and convincing evidence, that law enforcement's misrepresentations materially induced him to make incriminating statements .... Therefore, if a hearing takes place, the parties should be prepared to offer evidence bearing on these issues". [22], p. 5.

The government responded that no hearing was necessary, since evidence of "Haak's perception of (or feelings during) the interview with Zawierucha ... is not relevant to a determination of the voluntariness of his statements .... The inquiry into voluntariness is objective .... There can be few things more objective than the videotape of the entire interview .... I do not believe a need exists for the hearing". [22], p. 4. Defendant agreed with the government's suggestion ( [22], p. 1), and I canceled the hearing. *See* June 8, 2016 Text Order [22].

■■■■ "[W]aiver must be voluntary in the sense that it was the product of a free and deliberate choice rather than ... deception." Berghuis v. Thompkins, 560 U.S. 370, 382, 130 S.Ct. 2250, 176 L.Ed.2d 1098 (2010); United States v. Murphy, 703 F.3d 182, 192 (2d Cir. 2012). While the issue might have been more fully explored in an evidentiary hearing in which defendant

was subject to cross-examination, the government disclaimed that opportunity, arguing that no "legal basis exists on which to consider evidence of what Haak thought or felt during the interview" ( [22], p. 4)—and it was for that reason that I canceled the hearing.

■■■■ Therefore, the government may not now change course so as to argue that defendant's subjective beliefs *were* relevant, or that absent testimony as to his beliefs he has not met his burden of proof. "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him .... This rule, known as judicial estoppel, generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001).

Adopting the government's suggestion that I confine my inquiry solely to an objective consideration of the video recording, I conclude that the recording clearly and convincingly demonstrates that TFA Zawierucha caused defendant to confess, by creating the false impression that if he cooperated with the government he would not be prosecuted.[6] Therefore, his state-

---

5. "[T]he prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." Lego v. Twomey, 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). "However, where a defendant claims that the confession was induced by official trickery, deception or misrepresentation ... it is the defendant's obligation to show clear and convincing evidence of a material deception." United States v. Sacco, 884 F.Supp. 734, 745–46 (W.D.N.Y. 1995) (Skretny, J.). "It

must also be shown that the misrepresentations materially induced the defendant[ ] to make incriminating statements." United States v. Mitchell, 966 F.2d 92, 100 (2d Cir. 1992).

6. Although the government notes that TFA Zawierucha told defendant that "this isn't going away" (government's Memorandum [19], p. 3), that statement must be disregarded, as

ments to TFA Zawierucha were not voluntary, and should be suppressed. *See* United States v. Lall, 607 F.3d 1277, 1286 (11th Cir. 2010) ("if the government feeds the defendant false information that seriously distorts his choice then the confession must go out").

### CONCLUSION

 For these reasons, I recommend that defendant's motion [4] be granted to the extent that it seeks suppression of the statements which he gave to TFA Zawierucha on March 4, 2015 ( [4], Part IX), but that the remainder of the motion be denied as moot, having been withdrawn. Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by July 25, 2016 (applying the time frames set forth in Fed. R. Civ. P. 45(a)(1)(C), 45(c), and 59(b)(2)). Any requests for extension of this deadline must be made to Judge Vilardo. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F.2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

 Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985, 990–91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 59(c)(2) of this Court's Local Rules of Criminal Procedure, "[w]ritten objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and

the basis for each objection, and shall be supported by legal authority", and pursuant to Local Rule 59(c)(3), the objections must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objection.

it came only after defendant had already incriminated himself.