## UNITED STATES of America, Appellee,

v.

## James GAINES, Defendant–Appellant.

Docket No. 00–1665.

United States Court of Appeals, Second Circuit.

Argued: Nov. 14, 2001.

Decided: July 12, 2002.

---

Michael J. Stachowski, Buffalo, NY, for Appellant.

Joel L. Violanti, Assistant United States Attorney, Buffalo, N.Y. (Kathleen M. Mehltretter, United States Attorney, Buffalo, NY, of counsel), for Appellee.

Before CARDAMONE, McLAUGHLIN, and SOTOMAYOR, Circuit Judges.

CARDAMONE, Circuit Judge.

Defendant James Gaines (defendant or appellant) was convicted, following a jury trial, of violating 18 U.S.C. § 922(g)(1), a statute that makes it unlawful for a person having previously been convicted of a felony to possess a firearm. Judgment on this conviction was entered on September 26, 2000 in the United States District Court for the Western District of New York (Skretny, J.), and defendant was sentenced to 188 months imprisonment. From this judgment, defendant appeals. We affirm.

A crucial piece of evidence used by the prosecutor at trial was a statement Gaines made to the arresting officers. Because defendant is illiterate, his lawyer declares on appeal that this fact, under all the circumstances, should have resulted in a finding that the voluntariness of the statement is inherently tainted. The subsequent motion to suppress that statement should have been granted, counsel continues, because the confession was obtained in violation of defendant's Fifth Amendment right to remain silent. We agree that the inability of an accused to read or write is a factor to be considered in deciding the voluntariness of a confession. But that inability by itself does not mean a suspect cannot make a knowing, intelligent and voluntary waiver of his right to remain silent. Here we are persuaded, as was the district court, that Gaines knew full well what he was doing. He heard the statement, knew what it meant, and freely agreed to it.

## BACKGROUND

The conviction in this case stems from a sting operation involving a police informant. In January 1999 the informant revealed to the Federal Bureau of Investigation's Career Criminal Task Force (Task Force) that defendant was looking for handguns. At the behest of the govern-

ment, the informant set up an appointment with Gaines to make a sale. On the day of the appointment, February 6, 1999, members of the Task Force outfitted a truck with surveillance equipment and put a box containing three guns within reach of the front seats. The informant then drove to Gaines' home where defendant climbed into the truck. After inspecting the weapons, defendant decided to purchase all three, but asked for time to obtain the purchase price. The informant agreed, but refused to allow Gaines to take the guns until he had paid for them.

A short while later the informant returned, and Gaines climbed into the truck again. Once inside, Gaines asked for the guns to be left in the box and paid the $300 agreed upon. The informant accepted the money and told Gaines that it was a "done deal," which was the signal to the surveillance team that the transaction was complete. Unfortunately, the members of the FBI Task Force monitoring the sting were unable to hear the signal—because of faulty equipment—so no one moved in to make an arrest. Unsure of what to do, the informant stalled Gaines by having him look under the dashboard for a non-existent additional gun. Meanwhile, the government agents called the informant on his cell phone which allowed him to confirm that the transaction was complete. The agents then arrested Gaines.

Once defendant was arrested, a member of the Task Force, Agent Robert Wilson, reportedly had a short conversation with him about cooperating with the government. Gaines was later interviewed by a different member of the Task Force, Detective Robert Williams. Although the facts surrounding this interview are in dispute, it is clear that defendant made an inculpatory statement about the day's events, which was memorialized by Williams. As a result Gaines was convict-ed on a one-count indictment charging him as a felon with unlawful possession of firearms.

## DISCUSSION

Gaines raises several issues on appeal. These relate to his pre-trial motion to suppress his statement, the sufficiency of the evidence and other trial matters, and his sentencing. We discuss each of them.

### I Suppression of Statement

Defendant argues that his post-arrest statement should have been suppressed for three reasons. First, he contends he was not read his *Miranda* rights; second, he is unable to read, which he asserts renders his confession inherently tainted and thus involuntary; and third, he alleges that his statement was impermissibly coerced by a deceitful promise of leniency in exchange for cooperation.

 *Miranda* instructs generally that an uncounseled statement made by a defendant during custodial interrogation should be suppressed from use by the government in its case-in-chief unless the prosecution proves that the suspect voluntarily waived his right to counsel and privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). More specifically, when the government seeks to admit such statements at trial, it must prove by a preponderance of the evidence that the defendant relinquished his rights voluntarily with a full awareness of the rights being waived and the consequences of doing so. *United States v. Male Juvenile (95–CR–1074),* 121 F.3d 34, 39 (2d Cir. 1997). When evaluating voluntariness, we have no *per se* rule that bars oral or implicit waivers, *North Carolina v. Butler,* 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979), but rather, make a case-by-case determination based upon the

totality of the circumstances, *Tankleff v. Senkowski,* 135 F.3d 235, 244–45 (2d Cir. 1998).

 If, however, a defendant is not advised of his *Miranda* rights prior to making his custodial statement, an irrebuttable presumption of compulsion arises and the state cannot show that the suspect waived his rights voluntarily. *Oregon v. Elstad,* 470 U.S. 298, 307, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). A trial court's conclusions regarding the constitutionality of a defendant's waiver of his right to remain silent is reviewed *de novo* on appeal; the underlying findings of fact are reviewed for clear error. *See United States v. Spencer,* 995 F.2d 10, 11 (2d Cir.1993) (per curiam).

Gaines first contends the arresting officers did not inform him of his right to counsel and privilege against self-incrimination before taking a statement from him, which, if found to be true, would create an irrebuttable presumption of compulsion. For circumstantial support of his version of the facts, appellant asserts the FBI Task Force made a number of mistakes in the course of their sting operation, such as failing to ensure that all of the surveillance equipment was in proper working order. If some of the portions of the sting were performed improperly, Gaines reasons, then it must follow Detective Williams improperly interrogated him as well. Additionally, defendant points to a number of memory lapses on Williams' part concerning some of the specifics of the arrest, such as the detective's inability to recall whether he had asked Gaines any questions at the scene of the crime. Defendant urges us to draw an inference of dishonesty from these lapses in memory.

 At the suppression hearing Detective Williams testified that he read to defendant from a Treasury Department form that spelled out the *Miranda* warnings in detail, and that Gaines verbally acknowledged his understanding of the rights read to him. Since Gaines does not contest the adequacy of the Treasury Department form, this dispute is limited to the factual questions of whether Williams actually read the form to defendant and whether defendant acknowledged having been read his rights.

While it would be preferable to have physical evidence supporting Williams' testimony, such as Gaines' signature of acknowledgment (as was obtained on Gaines' statement), defendant points to no evidence that would establish clear error on the part of the district court in choosing to credit Williams' testimony over Gaines'. While defendant describes the sting operation as a "comedy of errors," the errors defendant points to—like the Task Force's failure properly to maintain the surveillance equipment—are not probative on the issue of credibility. Given the lack of contrary proof, we rely on the district court's findings because of its better vantage point from which to assess credibility. *See United States v. Rosa,* 11 F.3d 315, 329 (2d Cir.1993) ("Assessments of the credibility of witnesses are the province of the district court, and we are not entitled to overturn those assessments on appeal.").

Next, Gaines maintains that because he is unable to read or write, his inculpatory statement is "inherently tainted" and thus involuntary under the totality of the circumstances. Because defendant's counsel only raises this issue in a section heading and all but ignores it in his discussion, we would normally find the issue to have been waived. *See Norton v. Sam's Club,* 145 F.3d 114, 117 (2d Cir.1998) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal."). Nonetheless, giving defendant the benefit of the doubt on whether the issue was preserved, the un-

derlying argument, as earlier noted, is without merit. While a suspect's personal characteristics are weighed in the totality of the circumstances that are analyzed in determining the voluntariness of a confession, *see United States v. Anderson*, 929 F.2d 96, 99 (2d Cir.1991), an inability to read or write does not, by itself, establish that the suspect is incapable of making a voluntary and intelligent decision. *Cf. Male Juvenile (95–Cr–1074)*, 121 F.3d at 40 (holding that juvenile with documented cognitive disabilities knowingly waived his rights). In this case, defendant has not alleged that his illiteracy stems from a cognitive impairment or that his impairment renders him unable to understand his rights. *See id.* As such, we find no error in the district court's conclusion that Gaines understood the rights that were read to him and that he voluntarily waived them.

■■ As a third point, defendant asserts his statement should be suppressed because it was induced by a false offer of leniency in return for his cooperation. Specifically, he contends Agent Wilson told him that he could benefit from cooperating in other sting operations, but that the government never intended to allow him to do so. In assessing the totality of the circumstances, vague promises of leniency for cooperation are just one factor to be weighed in the overall calculus and generally will not, without more, warrant a finding of coercion. *See United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir.1995) (per curiam). In addition, though caution must be exercised, "[t]here is no inconsistency between the required warning that the defendant's statement may be used against him and a further statement that cooperation can help him. Both are true." *Id.* It has been recognized nevertheless that unfulfillable promises or certain other misrepresentations made to a suspect might render a confession involuntary because they overcome his desire to remain silent. *See United States v. Ruggles*, 70 F.3d 262, 265 (2d Cir.1995). But that is not this case.

Here, although Agent Wilson admits to conversing briefly with Gaines about the possibility of cooperation, he stated that nothing specific was promised to defendant for doing so. Instead, the agent simply said that the prosecutor and the judge would be made aware of Gaines' behavior if it amounted to cooperation. This vague description of the potential benefits of cooperation contained no material misrepresentations or unfulfillable promises. Accordingly, we find no error in the district court's determination that defendant's statement was made voluntarily.

## II Sufficiency of Evidence

Defendant next challenges the sufficiency of the evidence upon which his conviction under § 922(g)(1) was based. That statute makes it unlawful for a person, who has previously been convicted of a crime punishable by a prison term exceeding one year, "to ship ... or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Gaines contends his conviction cannot stand because the prosecution did not prove he possessed the firearms within the meaning of the statute. He avers more particularly that the sting operation aborted the sale of the guns prior to the transfer of possession.

■ To successfully challenge the sufficiency of the evidence underlying his conviction, defendant bears the heavy burden of showing—when viewing the evidence in the light most favorable to the government, and drawing all inferences in favor of the prosecution, *see Jackson v.*

*Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)—that no rational trier of fact could have found him guilty. *See United States v. Payton,* 159 F.3d 49, 55–56 (2d Cir.1998). There are two ways in which the government can prove possession within the meaning of § 922(g). The first, actual possession, requires the government to show defendant physically possessed the firearm. The second, constructive possession, "exists when a person has the power and intention to exercise dominion and control over an object, [which] may be shown by direct or circumstantial evidence." *Id.* at 56. Thus, under constructive possession, an individual can possess a gun within the meaning of the statute without ever physically handling the firearm. In addition, under this theory, possession need not be exclusive. *Id.*

■ With regard to actual possession, counsel for defendant insists that the "most telling" evidence in this case is the videotape of the sting operation, which he declares provides "no proof beyond a reasonable doubt of actual possession of the guns." Counsel then asserts that no guns are visible on the videotape. He argues, "All that we can see at the beginning is a box being taken out of the vehicle by an agent of the Task Force, and later returned to the vehicle. We never see the contents of the box." Based on our review of the videotape, this appears to be a distortion of the facts. Specifically, in the beginning of the tape, the informant and defendant discuss the three weapons in the box. Then Gaines reaches into the box, handles the guns one at a time, and briefly inspects each of them. When he does so, not only can we see the contents of the box, but we can see Gaines *actually holding* the weapons in his hand. This fact alone was sufficient to allow a jury to find actual possession, however briefly it occurred.

The discrepancy between the actual contents of the tape and defense counsel's representations make us wonder whether counsel watched the entire tape. If not, we have serious concerns about the quality of representation afforded defendant, especially given that counsel argued on appeal that the defense turned on this "telling" evidence. *Cf. Dinova v. Harris (In re Dinova),* 212 B.R. 437, 447 (B.A.P.2d Cir. 1997) (stating that an attorney has a duty not to put false evidence before the court or make misrepresentations to the court). Further, sloppy drafting of legal documents is particularly troubling when an attorney represents a client who is illiterate and has little or no ability to monitor his counsel's written work. *Cf. Chapman v. ChoiceCare,* 288 F.3d 506, 514 (2d Cir. 2002) (noting that court should exercise an "extra measure of caution" when adjudicating claims of litigants with limited ability "to participate in the proceedings ... [or] monitor [their] counsel's performance"). While the evidence against defendant was overwhelming in this case, we caution counsel to adhere zealously to the duties he owes his client and the courts.

In any event, even absent Gaines' brief actual possession of the weapons, the evidence was more than sufficient for a rational jury to find that he had constructive possession. The jury could have found beyond a reasonable doubt that after defendant paid for the weapons, he had the power and intention to exercise dominion and control over the firearms, irrespective of whether he was waiting for the informant to show him an additional gun. Appellant's insistence that there is no evidence to demonstrate that the guns were actually in the box or that he knew that they were in the box is once again belied by the videotape. On the portion of the tape that recorded the second meeting with the informant, defendant is shown

looking into the box before agreeing to pay the money. Thus, a reasonable juror could infer that defendant would have proceeded with the transaction only if the guns were present. Under either theory of § 922(g) possession, the evidence amply supports the jury's verdict.

### III Jury Charge

Defendant next asserts that the jury charge was incomplete and misleading with regard to constructive possession. Reading appellant's brief liberally, we discern several arguments relating to this issue: constructive possession was not charged; the instruction did not point out that the transaction was incomplete; and the portion of the instructions regarding knowledge was insufficient or incorrect.

 Because defendant did not raise these objections before the trial court, he is only entitled to a limited, plain error review. See Fed.R.Crim.P. 52(b); *United States v. Desimone,* 119 F.3d 217, 225 (2d Cir.1997). To prevail under this standard, appellant must demonstrate that there was an error, it is plain, and it affects substantial rights. See *United States v. Thomas,* 274 F.3d 655, 667 (2d Cir.2001) (en banc). In addition, even if these three requirements are met, we only exercise our discretion to notice the error if the plain error prejudices the fairness, integrity, or public reputation of a judicial proceeding. *Id.* Because he is unable to demonstrate that there was even an error, defendant cannot get past the first step of the test.

 First, defendant avers that constructive possession was not charged. Of course, if this were true, then the jury would have had to have found *actual* possession, which, as a more restrictive standard, would have benefitted him. In any case, even were we to ignore this flaw in reasoning, the argument is without merit.

As already observed, constructive possession "exists when a person has the power and intention to exercise dominion and control over an object." *Payton,* 159 F.3d at 56. In comparison, the district court charged the jury as follows

> To ["]possess["] it means to have something within a person's control. This does not necessarily mean that the defendant must hold it physically. That means to actually possess it, having actual possession of it. As long as the firearm is within the defendant's control, he possesses it. If you find that he either had actual possession of the firearm or he had the power and intention to exercise control over it, even though it was not in his physical possession, you may find that the government has proven possession.

Hence, although the charge did not expressly include the phrase "constructive possession," it contained a thorough description of all its elements. No more is required. See *United States v. Evangelista,* 122 F.3d 112, 116 (2d Cir.1997) ("[D]efendants are entitled only 'to have instructions presented which adequately apprise[ ] the jury of the elements of the crime charged and their defense.'" (second alteration in original)).

 Second, appellant maintains that the instruction did not clearly point out that the transaction was incomplete. However, defendant does not give us any reason why such an instruction would be appropriate and we have difficulty imagining one. Given that this was an issue of fact, it would have been improper for the district court to usurp the function of the jury by instructing them to resolve the issue in favor of defendant, especially given that the evidence clearly supported the contrary position—that the sale of the

three firearms was complete upon payment.

■ Appellant's third argument is that an instruction regarding knowledge of the contents of the box and knowledge of the dominion and control of the box was needed in order for the jury to understand the charge. This argument is based on appellant's belief that there is no direct evidence that the box in the truck contained any weapons or that Gaines knew that it did. Based on this position which, as noted earlier, is not supported by the videotape, defendant insists some type of specialized instruction was warranted. We disagree. The district court's instructions clearly required the jury to find that Gaines "knowingly possessed" a firearm "purposely and voluntarily." Even if the jury somehow could have concluded that, despite his handling of the weapons and looking into the box, Gaines did not know about the firearms, then the district court's knowledge instruction would have been sufficient to apprise the jury of this basis for acquittal.

### IV Commerce Clause Challenge

■ Defendant also disputes whether his possession of a firearm sufficiently satisfied the interstate commerce element of § 922(g). The nexus to interstate commerce in this case was defendant's concession that the firearms had "traveled at some time in interstate commerce." Yet, Gaines argues that the Supreme Court's recent decisions in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), have narrowed the permissible scope of § 922(g) by requiring a "more tangible connection with interstate commerce" than was the subject of his concession. But, in pressing this argument, defendant fails to cite, much less distinguish, *United States v. Santiago*, 238

F.3d 213, 216–17 (2d Cir.2001) (per curiam), which expressly rejected this position. *Santiago* held that neither *Morrison* nor *Jones* requires us to revisit our prior holding that only a minimal nexus with interstate commerce is necessary under § 922(g). As such, appellant's interstate commerce challenge is without merit.

Given the errors in defendant's briefing already mentioned, we are troubled by counsel's failure to mention this precedent. For this reason, we direct counsel's attention to New York's Code of Professional Responsibility, which states that

> [T]he complexity of law often makes it difficult for a tribunal to be fully informed unless the pertinent law is presented by the lawyers in the cause.... Where a lawyer knows of controlling legal authority directly adverse to the position of the client, the lawyer should inform the tribunal of its existence unless the adversary has done so.

N.Y. Jud. Law App.: Code of Professional Responsibility EC 7–23 (McKinney Supp. 2001–2002). The disciplinary rule associated with this ethical consideration states: "In presenting a matter to a tribunal, a lawyer shall disclose ... [c]ontrolling legal authority known to the lawyer to be directly adverse to the position of the client and which is not disclosed by opposing counsel." N.Y. Comp.Codes R. & Regs. tit. 22, § 1200.37(b)(1) [DR 7–106]; *cf. Hernandez v. Jones*, No. 92 CIV. 2451, 1993 WL 323820, at *5 n. 8 (S.D.N.Y. Aug.6, 1993) (noting that failure to cite controlling authority "is at best inexcusably poor lawyering and at worst suggests counsel's ignorance or violation of DR 7–106(B)(1)").

### V Downward Sentencing Departure

■ Passing now to the last issue, appellant declares that the district court erred in declining to grant him a downward departure pursuant to United States

Sentencing Guideline (U.S.S.G.) § 5K2.0, which allows a sentence "outside the range established by the applicable guidelines, if the court finds that there exists ... [a] mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." Although a court's decision not to depart under this provision is largely unreviewable, *United States v. McCarthy*, 271 F.3d 387, 401 (2d Cir.2001), a trial court's determination that a factor is categorically excluded from consideration is a question of law, which we review *de novo*. *See Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996).

Gaines declares that the district court refused to consider his assistance in a state murder prosecution as a possible basis for departure. Typically, for a district court to depart downward for substantial assistance to authorities, a motion by the government is required. *See* U.S.S.G. § 5K1.1. But, in this case, defendant assisted *state* prosecutors, not federal, which makes § 5K2.0 an appropriate potential basis for departure. *See United States v. Kaye*, 140 F.3d 86, 88–89 (2d Cir.1998). The sentencing court therefore had authority to consider a downward departure even without a motion by the government. *Id.* at 87.

Importantly, when sentencing defendant, the sentencing court recognized that § 5K2.0 provided it with the authority to depart downward, but nonetheless it declined to do so, reasoning that anyone who had ever cooperated in a past prosecution would become eligible for a downward departure. It concluded that such a departure might be appropriate when a defendant's assistance is "contemporaneous" with a pending proceeding, but that Gaines had assisted the state several years prior to the trial in the instant case.

Because defendant's assistance occurred so long ago, his conduct is akin to a prior good deed, which is a discouraged basis for departure. *See* U.S.S.G. § 5H1.11 (noting that "[m]ilitary, civic, charitable, or public service ... and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range"). Only if a defendant's conduct was so extraordinary that it falls outside of the heartland of cases covered by the guidelines would a downward departure be warranted. *United States v. Rioux*, 97 F.3d 648, 663 (2d Cir.1996). In this case, though defendant's prior actions were commendable, the sentencing court did not abuse its discretion in determining that they were not so extraordinary that they justified a departure. Consequently, defendant's attack on his sentence must fail.

## CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.