United States v. Swinton

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of December, two thousand nineteen.

PRESENT:
DENNIS JACOBS,
SUSAN L. CARNEY,
MICHAEL H. PARK,
*Circuit Judges.*

_____

United States of America,

*Appellee*,

v.                                                                      No. 18-101

Robert L. Swinton, Jr., AKA Scooby,

*Defendant-Appellant*.

_____

FOR APPELLEE:                      Tiffany H. Lee, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Rochester, NY.

FOR DEFENDANT-APPELLANT:     Robert Lee Swinton, Jr., pro se, Loretto, PA (Robert Rosenthal, Esq., standby counsel, New York, NY.)

Appeal from a judgment of the United States District Court for the Western District of New York (Wolford, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on December 28, 2017, is **AFFIRMED IN PART** and **VACATED IN PART**.

Appellant Robert L. Swinton, Jr., pro se, was indicted on five counts: (1) Conspiracy to Manufacture and Possess with Intent to Distribute Cocaine and Cocaine Base, in violation of 21 U.S.C. §§ 841 & 846; (2) Possession of Cocaine with Intent to Distribute, in violation of 21 U.S.C. § 841; (3) Use of Premises to Manufacture, Distribute and Use Controlled Substances, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2; (4) Possession of Firearms in Furtherance of Drug Trafficking Crimes, in violation of 18 U.S.C. § 924(c); and (5) Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. §§ 922(g) & 924(a)(2). He was convicted on all but Count One, the conspiracy count. On appeal, he challenges his conviction on those four counts and his sentence. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

I.      **Speedy Trial Issue**

First, Swinton argues that his constitutional right to a speedy trial was violated. We review the District Court's findings of fact as they pertain to such a challenge for clear error, and its legal conclusions *de novo*. *United States v. Lynch*, 726 F.3d 346, 351 (2d Cir. 2013). To determine if a defendant's Sixth Amendment right to a speedy trial has been violated, a court must consider the "'[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'" *United States v. Black*, 918 F.3d 243, 254 (2d Cir. 2019) (quoting *Barker v. Wingo*,

2

407 U.S. 514, 530 (1972)). The *Barker* Court emphasized that none of the four factors was either "a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533. Rather, it held that "they are related factors and must be considered together with such other circumstances as may be relevant." *Id.*

## A. Length of Delay

The length of delay is considered a "triggering mechanism": if the delay is not sufficiently long, there is no need to consider the other factors. *Id.* at 530. There is no bright-line rule for when a delay begins to infringe a defendant's speedy trial right; when unlawful infringement starts depends "upon the peculiar circumstances of the case." *Id.* at 530-31. Once the fact of a sufficiently long delay has been established, "the burden is upon the government to prove that the delay was justified and that appellant['s] speedy trial rights were not violated." *United States v. New Buffalo Amusement Corp.*, 600 F.2d 368, 377 (2d Cir. 1979).

Almost 57 months passed from the time Swinton was arrested in mid-October 2012 until his trial began in early July 2017. He was detained throughout that time. The Government concedes that "the almost five years' time that elapsed between Swinton's arrest and trial is significant, and cuts in favor of Swinton." Appellee's Br. 40. The length of the delay is sufficient to trigger a speedy trial inquiry, and "weighs heavily against the government." *United States v. Tigano*, 880 F.3d 602, 612 (2d Cir. 2018).

## B. Reasons for Delay

The Supreme Court has explained that "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighed heavily against the government," while "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker*, 407 U.S. at 531. We

3

have ruled that "[t]his factor must take into account the affirmative duty of the district court and the government to monitor the progress of a criminal case toward disposition and to take steps to avoid unnecessary delay where possible." *Tigano*, 880 F.3d at 613.

The pre-indictment delay in Swinton's case was almost entirely tied to plea negotiations and Swinton's investigation of and challenge to his Florida conviction. Between Swinton's October 2012 arrest and July 2017 trial, defense counsel, the Government, and the magistrate judge all requested adjournments, but the defense sought 21 continuances and adjournments during that time. Also during that period, Swinton filed numerous motions to which responses were filed, hearings held, and decisions rendered. At a November 2017 hearing, the District Court determined the responsibility for the delay was "overwhelmingly" Swinton's.

On appeal, Swinton argues that all of the extensions granted while he and the Government were negotiating a plea agreement should be "counted against the government." Appellant's Br. 30. We have ruled that "[g]ood faith plea negotiations by a defendant should not be equated to a waiver of speedy trial rights, and, under [certain] circumstances, the government must assume responsibility for the risk of institutional delays where the bargain ultimately is unsuccessful." *New Buffalo Amusement*, 600 F.2d at 378. Even if the six-month plea negotiation period is counted against the Government, however, the primary responsibility for the remaining 51 months' delay lies with Swinton because it arose from his challenges to his Florida conviction, his changes of counsel, and his filing of an omnibus motion, which included a complex motion to suppress. Adjudication of that motion, with its many supplemental filings and hearings, took much of the time between issuance of the indictment and the start of the trial. Accordingly, this factor cuts in favor of the Government. *See Tigano*, 880 F.3d at 613.

4

**C. The Manner of Defendant's Assertion of the Right**

The manner in which a defendant asserts his speedy trial right—the third *Barker* factor—is "entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Barker*, 407 U.S. at 531-32. Swinton first invoked his right to a speedy trial in the Affidavit of Due Process Violations that he filed on March 10, 2017, asserting that he had "continually" requested that his counsel not seek any further postponements. Swinton's Aff. of Ineffective Assistance of Counsel at 3, *United States v. Swinton*, No. 15-cr-6055 (W.D.N.Y. Mar. 10, 2017), ECF No. 111. Swinton attached to that motion a letter to his counsel dated December 23, 2016, in which he wrote that he wanted to proceed immediately to trial. The docket does not indicate whether any of the District Court, magistrate judge, or Government were aware that Swinton had declared that desire before March 10, 2017, when he filed his pro se motion and Affidavit.

In *Tigano*, the defendant "requested his speedy trial so frequently and vociferously" that we found it "simply inconceivable the government was not 'put on notice' that this issue would resurface if Tigano's speedy trial rights were not protected." 880 F.3d at 617. The same cannot be said for Swinton, who raised the issue to the court for the first time 53 months after his arrest and who therefore did not frequently and vociferously assert his right to a speedy trial. This factor cuts in favor of the Government.

**D. Prejudice to the Defendant**

The final *Barker* factor, prejudice, should be analyzed "in the light of the interests of defendants which the speedy trial right was designed to protect," namely, "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the

5

possibility that the defense will be impaired." *Barker*, 407 U.S. at 532. The last consideration is "the most serious." *Id.*

Swinton's 57 months of pretrial incarceration were certainly "oppressive," simply by virtue of the fact that he was not at liberty. In addition, a December 2016 letter from prison to his counsel plausibly represents that he experienced anxiety. Swinton asserts further that his defense was impaired by the delay because, by the time of trial, Rochester Police Department ("RPD") Investigator Ed Bernabei could not answer "[m]ost" of Swinton's questions "due to the lapse of time," Appellant's Reply Br. 19, and Swinton's co-defendant, David Jones, could have testified on Swinton's behalf had trial happened earlier. Jones, however, who died a month before trial in an unrelated homicide, had pleaded guilty to being in a drug conspiracy with Swinton; so it is therefore unlikely that Jones would have helped. Bernabei's failure to recall a few details raised on cross-examination—such as whether Bernabei collected evidence from Swinton's jacket and in which bedroom Bernabei recovered marijuana—cannot reasonably be said to have meaningfully impaired Swinton's defense. Thus, although Swinton may have suffered anxiety during his pretrial incarceration, which was undeniably long, there is no evidence that the delay meaningfully impaired his defense.

### E. Balancing Test

The four *Barker* factors "must be considered together," and "courts must . . . engage in a difficult and sensitive balancing process." *Barker*, 407 U.S. at 533. Here, the first prong, length of delay, weighs heavily in favor of Swinton; however, the second prong, reason for delay, and third prong, timely assertion of the right, cut in favor of the Government. The last prong, prejudice to the defendant, slightly favors Swinton. Assessing these factors *de novo*, the District Court did not

6

err in ruling that Swinton's Sixth Amendment right to a speedy trial had not been violated.

**F. Speedy Trial Act**

Swinton also alleges that this delay violated the Speedy Trial Act (the "Act"). The Act mandates that a criminal defendant be brought to trial within "seventy days from the filing date (and making public) of the information or indictment." 18 U.S.C. § 3161(c)(1); *see also United States v. Bert*, 814 F.3d 70, 78 (2d Cir. 2016). The Act excludes from the mandated 70-day indictment-to-trial period delays stemming from certain enumerated events. *See* 18 U.S.C. § 3161(h); *see also Bert*, 814 F.3d at 78. We review for clear error the District Court's findings of fact as they pertain to a violation of the Act; we review *de novo* its legal conclusions. *Lynch*, 726 F.3d at 351.

We conclude that the Government did not violate Swinton's rights under the Act. The 30-month period between Swinton's October 2012 arrest and the filing of the April 2015 indictment is excluded because the Act's clock begins to run after the indictment is filed, not before. *See* 18 U.S.C. § 3161(c)(1). In total, 23 days cognizable under the Act elapsed from the day Swinton was indicted until the day his trial began. These were two days from April 21, 2015 through April 22, 2015; four days from October 13, 2016 through October 16, 2015; fifteen days from May 16, 2017 through May 30, 2017; and two days from July 8, 2017 through July 9, 2017. Accordingly, the District Court did not err in its ruling.

**II.    Identity of the Confidential Source**

Swinton argues that the District Court abused its discretion in denying his motion to require the government to disclose the identity of the confidential source ("CS") who was referred to in the search warrant. We have long held that "[t]he government is not generally required to disclose

7

the identity of confidential informants." *United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997).

Disclosure obligations depend on "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro v. United States*, 353 U.S. 53, 62 (1957). In general, "[t]he defendant bears the burden of showing the need for disclosure of an informant's identity and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." *Fields*, 113 F.3d at 324 (internal citation omitted). "The defendant is generally able to establish a right to disclosure where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (internal quotation marks omitted). "Speculation that disclosure of the informant's identity will be of assistance is not sufficient to meet the defendant's burden . . . ." *Fields*, 113 F.3d at 324. The decision whether to order disclosure lies within the sound discretion of the district court. *Id.*

At trial, the Government did not call the CS to testify nor did it rely on any evidence about the CS to establish Swinton's guilt. The CS's identity was therefore not material to the defense, and we discern no abuse of discretion in the District Court's denial of Swinton's request to learn the CS's identity. *See Saa*, 859 F.2d at 1073 ("[D]isclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense.").

III. *Batson* Issue

Swinton contends next that the District Court erred in denying his *Batson* motion. To establish a *Batson* violation, a defendant asserting discrimination must first make a prima facie

8

showing that a prosecutor's use of peremptory challenges constituted discrimination against jurors who belong to minority groups. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986). Second, if the defendant makes a prima facie showing, "the burden shifts to the [Government] to come forward with a neutral explanation for challenging [minority] jurors." *Id*. at 97. "A neutral explanation in [this] context . . . means an explanation based on something other than the race of the juror." *Hernandez v. New York*, 500 U.S. 352, 360 (1991). Third, if the Government provides such an explanation, the district court then has "the duty to determine if the defendant established purposeful discrimination." *Batson*, 476 U.S. at 98. We review for abuse of discretion the trial court's determination under *Batson* as to whether a party has established a prima facie case. *United States v. Martinez*, 621 F.3d 101, 109 (2d Cir. 2010). We review for clear error its ruling on the issue of discriminatory intent, a mixed question of law and fact. *Id*.

The District Court found "very credible" the Government's race-neutral reasons for striking the two prospective jurors whose dismissal Swinton challenged. Gov't App'x at 367. Justifying its strikes, the Government pointed to reservations admitted by one prospective juror about whether the "system could even be fair" and whether his fellow jurors were implicitly biased, even after the court advised that it would instruct the jury panel that race could not factor into any of their deliberations. Gov't App'x at 362-63. The Government expressed concern that having a juror who did not believe that the opinions of his fellow jurors were well informed would be "very detrimental to the jury process." Gov't App'x at 363. The District Court reasonably accepted this explanation.

As to the other juror, who worked as a drug counselor, the Government observed that she exhibited a "general detachment . . . in terms of her concern" about individuals with substance

9

abuse problems whom she counseled, and her sister was employed by the Ontario County Public Defender's Office. Gov't App'x at 363-64. The District Court considered the totality of the circumstances and concluded that Swinton had not carried his burden of showing by a preponderance of the evidence that the government had unlawfully discriminated against the proposed juror on account of race. *See Martinez*, 621 F.3d at 109.

For these reasons, we conclude that the District Court did not clearly err by denying Swinton's *Batson* challenges.

## IV.     Indictment Challenge

Swinton maintains that the indictment was impermissibly duplicitous because Count 3 (Use of Premises to Manufacture, Distribute and Use Controlled Substances, in violation of 21 U.S.C. § 856) and Count 4 (Possession of Firearms in Furtherance of Drug Trafficking Crimes, in violation of 18 U.S.C. § 924(c)) each reference 18 U.S.C. § 2, which provides for punishment of someone who aids or abets the commission of a substantive crime.

"An indictment is impermissibly duplicitous where: 1) it combines two or more distinct crimes into one count in contravention of Fed. R. Crim. P. 8(a)'s requirement that there be 'a separate count for each offense,' and 2) the defendant is prejudiced thereby." *United States v. Sturdivant*, 244 F.3d 71, 75 (2d Cir. 2001). A claim that an indictment is duplicitous is "generally deemed to be waived if not properly raised before trial." *United States v. Berardi*, 629 F.2d 723, 729 (2d Cir. 1980); *see also* Fed. R. Crim. P. 12(b)(3)(B). Waiver of such a claim generally applies if "the alleged duplicitous character of the counts appears on the face of the indictment." *Sturdivant*, 244 F.3d at 76 (emphasis and internal quotation marks omitted).

Swinton did not present his argument that the indictment was duplicitous before trial. He

10

raised it in his post-trial motions under Rule 29 and 33. The basis for the duplicitousness—the indictment's joinder of the aiding and abetting violation to the substantive charges made in Counts 3 and 4—appeared on the face of the indictment. We therefore deem this argument to be waived. Even if the Court were to treat Swinton's contentions as not waived, they would be unavailing. The aiding and abetting statute, 18 U.S.C. § 2, does not in itself define a crime. *United States v. Campbell*, 426 F.2d 547, 553 (2d Cir. 1970). Accordingly, "[t]here can be no violation of 18 U.S.C. § 2 alone; an indictment under that section must be accompanied by an indictment for a substantive offense." *Id*. Joining aiding and abetting to a substantive crime is therefore not duplicitous.

### V.        Challenge to Extraction of Text Messages from Cellphone

Swinton asserts next that the District Court erred by denying his motion to suppress the text messages and nude pictures extracted from his cellphone. He argues that the extraction exceeded the scope of law enforcement's search warrant.

In reviewing a denial of a motion to suppress, we assess a district court's "conclusions of law *de novo* and its factual findings for clear error, viewing the evidence in the light most favorable to the government." *United States v. Ramos*, 685 F.3d 120, 128 (2d Cir. 2012). In particular, "[w]here the district court's factual findings are premised upon credibility determinations, we grant particularly strong deference to those findings." *United States v. Mendez*, 315 F.3d 132, 135 (2d Cir. 2002).

At the April 2016 evidentiary hearing that focused on this claim, RPD Commander Joseph Morabito testified that he believed the search was permitted by the warrant's language, which authorized the search of "[a]ny evidence that tends to demonstrate that a drug related offense was committed or that a particular person participated in the commission of such offense," including

11

"records reflecting the names, addresses and telephone numbers of persons from whom Cocaine is purchased and sold, including but not limited to[] address and telephone books, including those contained in cellular phones or Personal Data Assistants and telephone bills." Ex. B to Mot. for Bill of Particulars, *United States v. Swinton*, No. 15-cr-6055 (W.D.N.Y. July 6, 2015), ECF No. 59-2. He arrived at that conclusion, he explained, because, based on his experience, he knew that drug transactions were often "made over text messages"; that each text message is linked to a phone number; and that those phone numbers are often linked to an individual identified in the cellphone's "contacts." Tr. of Apr. 4, 2016 Evidentiary Hearing at 18-20, *United States v. Swinton*, No. 15-cr-6055 (W.D.N.Y. Apr. 18, 2016), ECF No. 84.

In October 2016, the magistrate judge recommended that the court deny Swinton's motion to suppress. She found that Commander Morabito credibly testified that he "reasonably and in good faith construed the language of the warrant to authorize the search of Swinton's cellular phone for text messages," and, therefore, the good-faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984), applied. Report & Recommendation at 8, *United States v. Swinton*, No. 15-cr-6055 (W.D.N.Y. Oct. 21, 2016), ECF No. 94. The District Court ultimately denied Swinton's suppression motion, reasoning both that the plain language of the warrant encompassed the text messages and that the good faith exception of *Leon* applied.

The magistrate judge's factual findings were premised upon its favorable credibility determination regarding Commander Morabito's explanation. As a result, "strong deference" is due to her recommendation to apply *Leon*'s good-faith exception. *Mendez*, 315 F.3d at 135. The District Court did not abuse its discretion in adopting that recommendation.

## VI. Rule 33 Argument: Admission of Bowen's Testimony

12

Swinton challenges the District Court's denial of his Rule 33 motion for a new trial. He argues that the testimony of Danielle Bowen regarding the conspiracy charge (as to which Swinton was acquitted) was "irrelevant, inflammatory, inadmissible and highly prejudicial to the remaining counts of the indictment." Appellant's Br. 44. The testimony caused "retroactive misjoinder," he asserts, and denied him a fair trial by harmfully "spill[ing] over" from one count to the others. *Id.*

We review a district court's denial of a Rule 33 motion for abuse of discretion. *United States v. DiTomasso*, 932 F.3d 58, 70 (2d Cir. 2019). "A defendant raising a claim of prejudicial spillover bears an extremely heavy burden." *United States v. Friedman*, 854 F.2d 535, 563 (2d Cir. 1988). "The concept of prejudicial spillover . . . requires an assessment of the likelihood that the jury, in considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant." *United States v. Hamilton*, 334 F.3d 170, 182 (2d Cir. 2003). We have formulated a three-part test for identifying prejudicial spillover:

> (1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong.

*Id*. (internal quotation marks omitted).

The term "retroactive misjoinder" refers to circumstances in which (as we have explained) the "joinder of multiple counts was proper initially, but later developments—such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of fewer than all convictions—render the initial joinder improper." *Id*. at 181 (internal quotation marks omitted). To obtain a new trial because of retroactive misjoinder, the defendant "must show compelling prejudice." *Id.* at 182 (internal quotation marks omitted). He may do so by demonstrating

13

"prejudicial spillover from evidence used to obtain a conviction [that is] subsequently reversed on appeal." *Id*. (alteration and internal citation omitted).

Bowen's testimony that Swinton and Jones sold cocaine from Swinton's residence and that they both handled firearms there was highly relevant, not only to whether they engaged in a conspiracy, but also to whether Swinton possessed cocaine with intent to distribute; whether he used the downstairs apartment for the purpose of manufacturing, distributing, or using controlled substances; and whether he possessed firearms. Swinton did not argue that the evidence presented on Counts 2 through 4—the text messages from Swinton's cellphone demonstrating his willingness to sell drugs, and pictures of the recovered drugs and related paraphernalia—was less inflammatory than Bowen's testimony, although it, too, served as compelling evidence that Swinton was involved in the sale of drugs. *See id*. at 182 (holding that the first prejudicial spillover factor "is not met where 'the evidence that the government presented on the reversed counts was, as a general matter, no more inflammatory than the evidence that it presented on the remaining counts.'" (quoting *United States v. Morales*, 185 F.3d 74, 83 (2d Cir. 1999)). That Swinton was acquitted on Count 1 but found guilty on the remaining counts indicates that the guilty verdicts were *not* affected by prejudicial spillover. *Id*. at 183 ("[N]o case has held that a defendant was entitled, on the ground of retroactive misjoinder, to a new trial on the counts of conviction simply because the jury found the government's proof on other counts unpersuasive."). Accordingly, we rule that the District Court did not abuse its discretion in denying Swinton's motion for a new trial on these grounds.

## VII.    Jurisdictional Element of Count 5

Swinton argues that the Government lacked jurisdiction to prosecute Count 5 of the

14

indictment (Felon in Possession of a Firearm) because it did not satisfy the crime's interstate commerce jurisdictional element. He observes that, in *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court ruled that the Government "does not have jurisdiction over a weapon for an eternity." Appellant's Br. 54. The firearms recovered from Swinton's residence, he argues, "left commerce" once they entered New York. *Id.* at 54-56.

The felon in possession of a firearm statute makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition." 18 U.S.C. § 922(g)(1). To satisfy the statute's interstate commerce requirement, "only a minimal nexus with interstate commerce is necessary." *United States v. Gaines*, 295 F.3d 293, 302 (2d Cir. 2002). We have approved jury instructions explaining that the statute's interstate commerce element is met "if the firearm in question previously had traveled in interstate commerce"; it is sufficient, we said, "that the firearm allegedly possessed or received by the defendant had at some point previously traveled across a state line." *United States v. Carter*, 981 F.2d 645, 648 (2d Cir. 1992) (internal quotation marks omitted). A panel of this Court more recently reaffirmed that, "when interpreted to require only a 'minimal nexus' between the defendant's possession of a firearm and interstate commerce, [§ 922(g)] is constitutional and does not violate *Lopez.*" *United States v. Estremera*, 282 F. App'x 935, 938 (2d Cir. 2008) (summary order); *see also United States v. Santiago*, 238 F.3d 213, 217 (2d Cir. 2001) (considering, on plain error review, and deciding constitutional question).

Because Swinton did not object to the relevant jury instruction before the jury retired to consider its verdict, a plain error standard of review applies. *United States v. Botti*, 711 F.3d 299,

15

308 (2d Cir. 2013). We therefore may reverse only if the instruction contains "(1) error, (2) that is plain, and (3) that affect[s] substantial rights." *Johnson v. United States*, 520 U.S. 461, 467 (1997) (internal quotation marks omitted).

Bureau of Alcohol Tobacco Firearms and Explosives ("ATF") Special Agent William Farnham testified at Swinton's trial that the rifle and revolver seized from Swinton's residence were manufactured in New Hampshire and Brazil, respectively. That testimony was sufficient to establish the "minimal nexus with interstate commerce" that is required to invoke § 922(g). *Gaines*, 295 F.3d at 302. Therefore, the District Court did not plainly err by instructing the jury that Swinton should be convicted of the felon-in-possession count if the Government proved "that at some point prior to [the] defendant's possession, the firearms and ammunition had traveled in interstate or foreign commerce." Tr. of July 19, 2017 Trial Proceedings at 1002, *United States v. Swinton*, No. 15-cr-6055 (W.D.N.Y. Oct. 12, 2018), ECF No. 282. Swinton's argument fails.

## VIII.  Substantive and Procedural Reasonableness of the Sentence

Finally, Swinton challenges his sentence. On a sentencing challenge, we review a district court's relevant factual findings for clear error and its application of the Guidelines to the facts *de novo*. *United States v. Loudon*, 385 F.3d 795, 797 (2d Cir. 2004).

First, Swinton argues that his 1994 Florida conviction for armed robbery should not be considered a "crime of violence" under U.S.S.G. § 4B1.1 & -.2, the career offender Guideline. But the Eleventh Circuit recently ruled that a Florida conviction for armed robbery qualified as a crime of violence under § 4B1.2(a), and on that basis affirmed a defendant's career offender sentence under § 4B1.1(a). *United States v. Ochoa*, 941 F.3d 1074, 1106-08 (11th Cir. 2019). We defer to that ruling, and the Eleventh Circuit's holding forecloses Swinton's argument concerning his

Florida conviction. The unpublished opinion in *Lee v. United States*, No. 16-cv-6009, No. 08-cr-6167, 2016 WL 1464118, at *5-7 (W.D.N.Y. Apr. 12, 2016), which noted in dicta that a defendant's Florida robbery conviction could not be a predicate offense under the Armed Career Criminal Act ("ACCA"), and on which Swinton relies, does not control, particularly in light of *Ochoa*.

Next, he asserts that his 1999 New York conviction for attempted criminal sale of a controlled substance in the third degree should not be considered a predicate controlled-substance offense under the career offender Guideline.[1] This question is an open one in the Second Circuit.

Several of our sister circuits, including the Sixth Circuit in a recent *en banc* opinion, have held that "[t]he Guidelines' definition of 'controlled substance offense' does not include attempt crimes." *United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc); *see also United States v. Winstead*, 890 F.3d 1082, 1090-92 (D.C. Cir. 2018) ("If the Commission wishes to expand the definition of 'controlled substance offenses' to include attempts, it may seek to amend the language of the guidelines by submitting the change for congressional review."). As the *Havis* court explained, "the plain language of § 4B1.2(b) says nothing about attempt crimes." 927 F.3d at 385. The government urged the court to look to the commentary, which states: "'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." USSG § 4B1.2(b) cmt. n.1; *cf. United States v. Moore*, 916 F.3d 231, 237 (2d Cir. 2019) ("Commentary and application notes in the Guidelines must be given

---

[1] Although an argument could be made that Swinton waived this argument, we have long held that pro se litigants must be accorded "special solicitude." *E.g.*, *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994); *see also United States Sadler*, 765 F. App'x 627, 630-31 (2d Cir. 2019) (summary order) (considering pro se litigant's challenge to sentence even though it was not raised until reply brief).

17

controlling weight unless they: (1) conflict with a federal statute, (2) violate the Constitution, or (3) are plainly erroneous or inconsistent with the Guidelines provision they purport to interpret."); *United States v. Jackson*, 60 F.3d 128, 131 (2d Cir. 1995) (characterizing application note as "authoritative"). But "commentary to the Guidelines never passes through the gauntlets of congressional review or notice and comment," and thus—under controlling Supreme Court precedent—it "has no independent legal force." *Havis*, 927 F.3d at 386 (citing *Stinson v. United States*, 508 U.S. 36, 44-46 (1993)).

Two other Circuits have now determined that the Application Note to § 4B1.2 is not a mere "*interpretation*" of the Guideline, but an attempt to actually change the plain text "to *add* an offense not listed in the guideline." *Id.* (emphasis in original). Where "[t]he guideline expressly names the crimes that qualify as controlled substance offenses . . . [and] none are attempt crimes," but "the Commission knows how to include attempt crimes when it wants to—in subsection (a) of the same guideline, for example," "[t]he Commission's use of commentary to add attempt crimes to the definition of 'controlled substance offense' deserves no deference." *Id.* at 386-87; *see also Winstead*, 890 F.3d at 1091-92 (observing that USSG § "4B1.2(b) presents a very detailed 'definition' of controlled substance offense that clearly excludes inchoate offenses").

Whether the career offender Guideline applies in Swinton's case is a serious question with serious consequences, namely thirteen to sixteen years of incarceration. *Cf. Winstead*, 890 F.3d at 1090 (exercising *de novo* review over textual legal question whether attempt crimes constitute controlled substance offenses under career offender Guideline). Neither the parties nor the District Court have fully addressed the question in this case. They should have the opportunity to do so before we opine on the issue. Accordingly, we remand for resentencing, with directions that the

18

District Court consider again whether, in light of the concerns addressed in *Havis* and *Winstead*, the career offender Guideline applies to Swinton on his criminal record. Finally, our decision obviates the need to address Swinton's additional arguments regarding his sentence.

We have considered Swinton's remaining arguments and conclude that they have no merit. Accordingly, we **AFFIRM IN PART** and **VACATE IN PART** the judgment of the District Court.

FOR THE COURT:
Catherine O-Hagan Wolfe, Clerk of Court

19